# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## MARCH TERM, 1918.

### SHURMAN *et al. v.* CITY OF ATLANTA *et al.*

1. A municipal corporation, in the proper exercise of its police power, may by ordinance classify certain kinds of personal property which its legislative department considers more susceptible of theft than other property.

(*a*) Such ordinance is not arbitrary and unreasonable because it requires dealers in such property, some of whom gather, buy, sell, and peddle it, to apply to the chief of police of the municipality for a license, to pay a reasonable occupation tax therefor, and to give a bond in a reasonable sum, conditioned to pay the city for any damages done on account of dishonest, fraudulent, or improper conduct in the administration of the business so licensed.

(*b*) Nor is the ordinance under review arbitrary and unreasonable because it requires an inspection by a police officer of the property to be purchased, in the manner designated in section six.

(*c*) Nor does such ordinance deprive dealers, etc., in such articles of due process of law, or of equal protection of the laws, in violation of the fourteenth amendment of the Federal constitution.

2. The "junk ordinance" of the City of Atlanta is not invalid as a whole on account of any reason urged against it.

3. Section 14 of the ordinance, which provides that it shall be unlawful for any common carrier to receive or accept for delivery from any junk dealer, etc., any article of junk classified by the ordinance, purchased by such dealer, etc., for shipment or consignment, unless the same is "tagged" as provided by the ordinance, is not void for the reason that it is in conflict with section 2634 of the Civil Code of 1910, which vests in the railroad commission the power to make and enforce reasonable rules to require railroad corporations in this State to receive and forward all freight which may be tendered to or received by them for transportation, etc., in the absence of proof that the railroad commission has exercised such power by adopting a rule or rules in conformity

1

therewith which are in conflict with the ordinance. The Supreme Court will not take judicial cognizance of the fact that the commission has or has not adopted such a rule.

4. The requirement in the ordinance of payment to the city of a license fee of $300 per annum, and the giving of a bond of $1,000 to observe the law by dealers in junk, and a license fee of $50 per annum and a bond of $250 on the part of junk peddlers, junk buyers, and junk gatherers, in order to do business as such, is not open to the objection that such ordinance is unreasonable, and arbitrarily discriminates against such classes of junk dealers, etc.

(a) Such ordinance is not invalid as laying a double tax on one who conducts the business both of "junk dealer" and of "junk gatherer," "junk buyer," etc. The ordinance is a reasonable classification of each business; and if the same person conducts two or more kinds of business thus classified, he is liable to an occupation tax on each business conducted.

5. A municipal ordinance is not arbitrary and unreasonable which forbids a dealer, etc., in junk to employ any minor under the age of 21 years to work in his junk yard, or on a junk wagon, or as an apprentice, or in any capacity in connection with the junk business; nor is such an ordinance invalid because it prohibits junk dealers, etc., from buying or receiving junk from minors under 18 years of age, and thus interferes with the right of minors to engage in business with the consent of their parents.

6. A municipal ordinance is not invalid because it requires that the license to be issued to a junk dealer under it shall have printed, stamped, or written upon it as a part thereof, "that same shall be revoked, ipso facto, in case of conviction in the recorder's court, either of the applicant or any of his servants, agents, or employees, on account of a conviction for violation of any of the provisions of this ordinance [or] of the State law against buying and receiving stolen property."

7. An ordinance which makes it unlawful for any junk dealer, etc., to melt, cut, mash, or disfigure any junk or like material, purchased by him, until the lapse of ten days from the inspection thereof, "provided that the chief of police shall have the power to shorten the time hereinafter provided, in cases of emergency, when he shall have reasonable cause to believe that said material is not stolen property and has been acquired in good faith and without any violation of any law of the State of Georgia or of the City of Atlanta," is not arbitrary and unreasonable, and does not deprive such dealer of due process of law.

8. An ordinance which provides that it shall be unlawful for any person, firm, or corporation, whether a licensed dealer or otherwise, to buy or receive from a junk dealer, peddler, or gatherer any brasses, copper, lead, railroad journals, copper wire, plumbing material, electric-light wire or fixtures or any part of the same, whether broken or sound, or any telephone wires or fixtures, or any water-faucets, electric switches, or parts of the same, unless such material shall have been inspected and passed on by a police officer of the city, is not arbitrary and unreasonable, and does not deny to the plaintiffs due process of law, or the equal protection of the laws.

9. The ordinance    not invalid for any other reason assigned; and it was not error to deny an injunction against its enforcement.

No. 730. APRIL 12, 1918.

Petition for injunction. Before Judge Bell. Fulton superior court. October 31, 1917.

The City of Atlanta through its mayor and general council adopted, on August 20, 1917, what is known as the "junk ordinance," as follows:

"An ordinance repealing an ordinance approved July 18th, 1917, being an ordinance regulating the buying of junk, junk dealers, junk peddlers, etc., and for other purposes; and in lieu thereof establishing a new ordinance embodying most of the provisions of said repealed ordinance, but also embodying some amendments, and for other purposes. Be it ordained by the Mayor and General Council of the City of Atlanta as follows:

"Sec. 1. That the ordinance approved July 18th, 1917, regulating the buying of junk, junk dealers, and junk gatherers, and for other purposes, be and the same is hereby repealed.

"Sec. 2. That no person shall hereafter engage in the business of a junk dealer, junk buyer, junk peddler, or junk gatherer, without a license therefor and without complying with the provisions of this ordinance.

"Sec. 3. It shall be unlawful for any person to buy junk such as described in Sec. 6 of this ordinance, without complying with the provisions of this ordinance.

"Sec. 4. That it shall be unlawful for any person, firm, or corporation to engage in the business of peddling junk, without having first taken out a license, as hereinafter provided.

"Sec. 5. It shall be unlawful for any person, firm, or corporation to engage in the occupation of gathering junk on the streets, alleys, public places, or private property without complying with the provisions of this ordinance.

"Sec. 6. That it shall be unlawful for any junk dealer, junk buyer, or junk gatherer to buy, receive, or possess or have in possession any part of any railroad-car, street-car, steam locomotive, or any railroad equipment, or any plumbing fixtures, or waterworks fixtures, or any part thereof, or any part of any automobile, or motorcycle, or any gas or electric chandelier, or parts thereof, or dairyman and milk dealer's bottles, or any brass or copper, excepting kitchen hardware, builder's hardware, mantels, grates,

or any railroad journals or air-brake hose or knuckle pins or any railroad brasses, or any copper wire or copper cable, or any sewer manhole covers, or any storm-water inlet covers, or second-hand medical or law books, or old gold or jewelry, second hand watches, surgical instruments, unless at the time of buying or receiving or having in possession of any of the same such junk dealer, junk peddler, junk buyer or junk gatherer, as the case may be, shall have first notified the chief of police of the City of Atlanta, in writing, of the intention to purchase the same, which notice shall give the name of the person from whom it is proposed to be purchased, a full description of the material to be purchased, the house address of the person from whom it is to be purchased, the location of the material to be purchased, giving the house and street address, the price to be paid for such material, and shall have received from the chief of police, prior to the purchase of said material a written certificate that the chief of police has caused such junk to be inspected by a police officer of the City of Atlanta; provided, however, that the provisions of this section shall not apply to car-load shipments of material, or to shipments in less than car-load lots, shipped over any railroad within or without the State of Georgia.

"Sec. 7. When junk has once been inspected and tagged, no further inspection or tagging shall be required, but each dealer handling same shall keep a record thereof as otherwise provided by this ordinance. The purpose of this ordinance is to secure one inspection of junk and the tagging thereof which shall authorize its further handling in the City of Atlanta, provided the persons therein handling same shall keep a record not only of the junk but of the person from whom purchased.

"Sec. 8. When a licensed junk dealer, junk gatherer, junk peddler, or junk buyer shall purchase any such junk from a railroad, telegraph or telephone company, or gas or electric company, the original bill of sale or invoice for such purchase shall be accepted in lieu of the certificate of the police department, and the taking of the same shall be deemed a full compliance with the provisions of this ordinance.

"Sec. 9. That whenever application is made to the chief of police for inspection of such material, it shall be the duty of the chief of police to designate a police officer to make such inspection

of such material, who shall make a report in writing of the results of such inspection, showing the name of the person in possession of such material, the house and street number, any marks of identification which may appear on such material; and it shall be the duty of the officer to place on each article inspected a tag of inspection on the same, such tag to contain the date of inspection and the initial of the officer making the same, and a description of the article inspected, and a record of such inspection shall be made in the office of the chief of police.

"Sec. 10.   That if upon such inspection such police officer shall have reasonable cause to believe that any of such material so inspected is stolen property, it shall be his duty to segregate the articles which he shall have reasonable cause to believe were stolen, and it shall therefore [thereafter] be unlawful for the person in possession to remove same or dispose of it, mutilate, melt, disfigure, or to interfere with the property so segregated until the lapse of ten days from the date of such inspection.

"Sec. 11.   It shall be unlawful for any junk dealer, junk peddler, junk buyer, or junk gatherer to buy or receive any junk as described in this ordinance from any girl or boy under the age of eighteen years.

"Sec. 12.   That it shall be unlawful for any junk dealer, junk buyer, or junk gatherer to conceal such junk material as described in this ordinance, in any residence or under any residence or house, or by burying it under the ground, or by concealing it in any stable, barn, woodshed, coalhouse, or other building or outhouse, or in any place whatsoever where the same is not open for inspection.

"Sec. 13.   That it shall be unlawful for any junk dealer, junk seller, junk buyer, or junk gatherer to melt, cut, mash, or disfigure any junk or material such as described in this ordinance, purchased by him, until the lapse of ten days from the inspection thereof, as hereinafter. provided, provided that the chief of police shall have power to shorten the time hereinafter provided, in cases of emergency, when he shall have reasonable cause to believe that said material is not stolen property and has been acquired in good faith and without any violation of any law of the State of Georgia or of the City of Atlanta.

"Sec. 14.   That it shall be unlawful for any common carrier

to knowingly receive or knowingly accept for delivery from any junk dealer, junk peddler, junk buyer, or junk gatherer, or any agent, servant, or employee of such persons, any junk covered by this ordinance, purchased by such dealer, peddler, buyer, or gatherer in the City of Atlanta, for shipment or consignment, unless the same is tagged as provided in section 9 of this ordinance.

"Sec. 15. Every person, firm, or corporation desiring to engage in the business of dealing in junk either as a junk buyer, or for conducting a junk yard, or as a junk peddler or junk gatherer in the City of Atlanta, shall make application to the Mayor and General Council of the City of Atlanta, specifying as near as may be the place where he or they intend to carry on said business, and such application shall be signed by the applicant, and attested by at least three (3) freeholders, citizens of the City of Atlanta of good reputation, certifying to the reputation, fair name, and moral character of the applicant or applicants; provided, however, that no such application shall be granted to any person who has, within twelve months prior to the presentation of such application, been convicted in the recorder's court for any violation of this ordinance, or of the offense of buying, receiving, or concealing stolen property; nor shall any such application be granted to any person who on account of his moral character is an unfit or improper person to engage in such business.

"Sec. 16. That if such application shall be granted, before any license shall be issued to the applicant each party granted a license as a junk dealer shall execute a bond payable to the City of Atlanta in the sum of $1,000.00, and each applicant granted a license to operate as a junk peddler, or junk buyer, or junk gatherer shall execute a bond payable to the City of Atlanta in the sum of $250.00, conditioned to pay the city, or any one else suing in the name of the city for their use, for any and all injuries or damages received on account of dishonest, fraudulent, immoral, or improper conduct of the administration of the business so licensed; and said bond shall be renewed each fiscal year and upon the same conditions, provided the sureties on all such bonds shall be approved by the mayor of the City of Atlanta.

"Sec. 17. That each applicant for license to do business as junk dealer shall pay an occupation tax of $300 per year, and each applicant to do business as a junk peddler or junk buyer or junk

gatherer shall each pay an occupation tax of $50.00 per year, all and each of said occupation taxes to be payable annually in advance.

"Sec. 18.   The Mayor and General Council shall have and does hereby retain the right, power, and privilege of revoking any permits, licenses, or grants made to such applicants under the terms of this ordinance, and when so revoked, the applicant shall be entitled to receive back the prorate part of the license fee paid which has been unused on account of said revocation.   Provided that such applicant may make a new application, if re-examined and relicensed in the discretion of the Mayor and General Council; but there shall be no such reapplication or re-examination oftener than once a year; and the license granted under this ordinance shall have printed thereon the words: 'Subject to revocation by the Mayor and General Council of the City of Atlanta.'

"Sec. 19.   Whenever the Mayor and General Council shall grant such applicant a license, and bond has been executed, approved by the mayor, and filed with the clerk of council, a license shall thereupon be issued to the applicant, and it shall have printed, stamped, or written upon such license, as a part thereof, 'That same shall be revoked, ipso facto, in case of conviction in the recorder's court, either of the applicant or any of his servants, agents, or employees, on account of a conviction for violation of any of the provisions of this ordinance [or] of the State law against buying and receiving stolen property.

"Sec. 20.   That it shall be unlawful for any person to peddle junk or to transport any junk in any wagon in the City of Atlanta, unless such person shall have a license, and shall have printed on the wagon in large letters of not less than six inches in height the name of the licensed junk buyer, junk peddler, or junk gatherer operating the wagon, and the number of the license of such junk buyer, junk peddler, or junk gatherer.

"Sec. 21.   That every person, firm, or corporation, licensed to carry on either of the businesses covered by this ordinance, shall at all times make a record, in a book kept for that purpose, of the purchase, receiving, or taking of any copper, brass, lead, or any other articles or things described in Sec. 6 of this ordinance, same to be made at the time of so purchasing, receipt, or taking of same, of an accurate description of the articles so purchased, received,

or taken, the amount of money paid therefor, the name and address of the person furnishing same. At the close of each day's business, such licensee shall mail or deliver to the chief of police of the City of Atlanta a report in legible English, giving a list of each article purchased, received, or taken, the address of the person delivering same; provided, however, that such daily report, where furnished by junk dealers, need not show purchases from other licensed junk dealers in the City of Atlanta.

"Sec. 22. The book herein provided for shall at all times be kept open for inspection by the chief of police or of any police officer or detective of the City of Atlanta, bearing authority therefor from the chief of police or as a captain of the police or from the chief or sergeant of the detectives department.

"Sec. 23. It shall be unlawful for any junk dealer, junk peddler, junk buyer, or junk gatherer to employ, apprentice, engage, or to suffer, cause, or allow any minor under the age of 21 years to be employed, apprenticed, or engaged to work in his junk yard or on his or her, their, or its junk wagon, as driver or any other capacity in connection with the junk business.

"Sec. 24. It shall be unlawful for any junk dealer to own, possess, or operate or cause to be operated, at any junk yard or elsewhere in connection with any junk business, any melting pot or furnace.

"Sec. 25. It shall be unlawful for any person, firm, or corporation, acting as a junk dealer, junk peddler, junk buyer, or junk gatherer or prosecuting any business covered by this ordinance, to carry on same or handle junk as a dealer or buyer or peddler or otherwise later than 6 o'clock p. m. or earlier than 6 o'clock a. m. of each day upon which business in the City of Atlanta is allowed to be prosecuted.

"Sec. 26. It shall be unlawful for any person, firm, or corporation, whether a licensed dealer or otherwise, to buy or receive from a junk dealer, buyer, peddler, or gatherer, any brasses, copper, lead, railroad journals, copper wire, plumbing material, electric-light wire or fixtures or any part of the same, whether broken or sound, or any telephone wires or fixtures, or any water-faucets, electric switches, or parts of same, unless such material shall have been inspected and passed on as provided in Sections 9 and 10 of this ordinance.

"Sec. 27. It shall be unlawful for any person operating a brass or copper foundry, or any machine shop or foundry or furnace; to place in any such furnace or in a melting pot to be melted or disfigured, rendered unrecognizable or more difficult of identification, any junk or material such as set forth in Sec. 13 or Sec. 26 of this ordinance, unless such material shall have been first inspected, as provided by Sections 9 and 10 of this ordinance.

"Sec. 28. That any junk dealer, junk peddler, junk buyer, or junk gatherer, or their servants, agents, employees, or others who may aid or abet therein, violating any of the provisions of this ordinance shall be punished by a fine not exceeding two hundred ($200.00) dollars, or sentenced to work on the public works of the City of Atlanta for not exceeding thirty days, either or both penalties to be inflicted in the discretion of the recorder; provided further, that upon the conviction of any servant, agent, or employee of a licensed junk dealer, junk peddler, junk buyer, or junk gatherer, of a violation of any of the provisions of this ordinance while such servant, agent, or employee was acting within the line and scope of his employment in the business of his employer, namely, the parties above named in this section, shall likewise, ipso facto, cancel and annul the license so issued to such employer.

"Sec. 29. Any railroad, common carrier, or any servant of any railroad or common carrier, who knowingly receives any shipment in violation of this ordinance, shall be punished by a fine not exceeding two hundred ($200.00) dollars, or sentenced to work upon the public works of the city for not exceeding thirty days, either or both penalties to be inflicted in the discretion of the recorder.

"Sec. 30. That all ordinances and parts of ordinances in conflict with this ordinance be and the same are hereby repealed.

"Sec. 31. The purpose of this ordinance is to establish new and general regulations for all persons handling junk of the kind named, as above set out, and to substitute for all existing ordinances on the same subject the provisions of this ordinance. The existing ordinances covering matters included in this ordinance are not repealed hereby nor modified in any manner."

The plaintiffs filed their petition to restrain enforcement of the ordinance against them. The court denied an injunction, and this judgment is complained of.

*Leonard J. Grossman* and *James K. Hines,* for plaintiffs.

*James L. Mayson* and *Samuel D. Hewlett* for defendants.

HILL, J. (After stating the foregoing facts.)

1. The plaintiffs seek to have the ordinance just set out enjoined on the ground that it is unreasonable and void as a whole, and that certain sections thereof are void for reasons which will now be considered either generally or in detail. It is insisted that the court erred in not holding that the provisions of section 6 of the ordinance are unreasonable, arbitrary, unduly discriminatory, and that they deprive them of their liberty of action and contract and of the right to acquire property, and deny them due process of law and equal protection of the laws, in violation of the fourteenth amendment of the constitution of the United States. The evidence in the record shows that prior to the adoption of the ordinance vacant houses in the City of Atlanta were systematically robbed of plumbing and other fixtures; that such houses were practically dismantled by thieves who secured the plumbing, building hardware, gas and electric-light fixtures, metals and brasses, and other articles covered by the ordinance, which they would sell to dealers in junk; that it was necessary to expend large sums of money to repair and restore such houses to their former condition in order to make them tenantable; and that these depredations were of almost daily occurrence. It was in this situation that the mayor and general council were petitioned by citizens of the city to adopt an ordinance which would remedy the evil complained of; and the present ordinance is the result.

Similar ordinances to the one now under review have been considered and passed upon by many courts of other jurisdictions. This court has never been called upon to decide whether a "junk ordinance" quite as drastic as the present one undoubtedly is can stand the legal assaults made upon it. Section 6 of the ordinance is the storm-center of attack, though the ordinance as a whole is assailed. It is argued that this section is arbitrary and unduly discriminatory; that it deprives the plaintiffs of liberty of action, and of the right to contract and to acquire property; and that it deprives them of due process of law and of the equal protection of the laws. A municipality has the authority to place reasonable and necessary regulations on vocations or businesses which come within the proper exercise of the police power. The ordinance here assailed does not prohibit buying, gathering, dealing in, or

selling junk of the kinds enumerated, but it provides the manner
in which this shall be done; and unless it offends some constitu-
tional right or legal principle applicable, it will be held to be a
valid exercise of the police power.  It does not follow that, be-
cause by enforcing such ordinance a junk dealer may be somewhat
injured in his business, this deprives the city of its right to a
proper exercise of the police power.  *City of Cartersville* v. *Mc-
Ginnis,* 142 *Ga.* 71 (82 S. E. 487, Ann. Cas. 1915D, 1067).

The present ordinance seems to be in some respects similar to
a junk ordinance of the City of Anniston, Ala., which was under
review in the case of Levi v. Anniston, 155 Ala. 149 (46 So. 237).
From the report of that case it appears that the ordinance re-
quired a certificate from the chief of police as to the amount,
description, of goods, etc., and the name of the seller, and upon
these things being made to appear a license to purchase the junk
would be issued by that official.  The ordinance was held valid by
the Supreme Court of Alabama, as against the objection that it
exempted persons and corporations engaged in the manufacture of
brass goods, pig iron, cast-iron pipe, etc.  And see Soon Hing
v. Crowley, 113 U. S. 703, 708-709 (5 Sup. Ct. 730, 28 L. ed.
1145).  In Grossman v. Indianapolis, 173 Ind. 157 (88 N. E.
945, 89 N. E. 862), the city was authorized to tax persons dealing
in junk; and the ordinance required a license, and a record to be
kept of the purchases, showing the prices paid, the time of the
purchase, the name, residence, age, color, height, weight, complex-
ion, and style of dress and beard of the seller, and a holding of
the junk for 48 hours before reselling, etc.  These regulations were
held to be a valid exercise of the police power, and not unreason-
able.  In the case of Gundling v. Chicago, 177 U. S. 183, 188
(20 Sup. Ct. 633, 44 L. ed. 725), it was said: "Regulations
respecting the pursuit of a lawful trade or business are of very
frequent occurrence in the various cities of the country, and what
such regulations shall be and to what particular trade, business,
or occupation they shall apply, are questions for the State to de-
termine, and their determination comes within the proper exercise
of the police power of the State; and unless the regulations are
so utterly unreasonable and extravagant in their nature and pur-
pose that the property and personal rights of the citizen are un-
necessarily, and in a manner wholly arbitrary, interfered with or

destroyed without due process of law, they do not extend beyond the power of the State to pass, and they form no subject for Federal interference." In Rosenthal v. New York, 226 U. S. 260 (33 Sup. Ct. 27, 57 L. ed. 212, Ann. Cas. 1914B, 71), it was held: "A State may, in the exercise of the police power, classify separately particular kinds of personal property which the legislature considers more susceptible of theft than other property. It is not unreasonable or arbitrary to require dealers in junk to make diligent inquiry to ascertain that persons selling to them wire cable, iron, etc., belonging to railroad companies, have a legal right to do so. Dealers who provide an important and separate market for a particular class of stolen goods may be put in a class by themselves; and so as to dealers in junk." In the opinion of the court, rendered by Mr. Justice Pitney, it was said: "Nor can the act in question be deemed to conflict with the 'equal-protection' clause because it places junk dealers, etc., in a class by themselves." See McQuillin on Mun. Cor. § 193. It is argued that under the section of the ordinance now being considered no junk dealer, junk buyer, or junk gatherer, or a person owning a house, and who desires to buy articles enumerated in the section, can receive or possess them without first notifying the chief of police of the City of Atlanta in writing of the intention to purchase them, giving the name of the seller, a full description of the material to be purchased, the address of the seller, the location of the material to be purchased, with the house and street address, the price to be paid for such article, and receiving from the chief of police a written certificate that such articles have been inspected, etc. These requirements are not more drastic than some of the ordinances which have been upheld by the courts of other jurisdictions as being a proper exercise of the police power. It would indeed be strange if the city could not adopt an ordinance which would protect its citizens from the thieves who rob their houses for the purpose of selling their loot to junk dealers, even though the business of the junk dealers in buying the stolen articles may be somewhat affected thereby. One purpose of the police power is to protect the citizens in their property from those who would deprive them of it, not only without "due process of law," but contrary to law; and it can not be said, in view of the authorities above cited, and others not cited, that the section of the ordi-

nance under review is open to the objections urged against it. What has been said applies to the ordinance in so far as it relates to dealers, buyers, etc., of junk when dealing with the enumerated articles in connection with the business in which they are engaged. It would be a strained construction of the ordinance to hold that it would apply to individual purchases made for the purpose of supplying some needed personal use of the buyer, as when building a house for himself and purchasing the necessary articles in the usual manner for that purpose, or articles needed for the repair of his own automobile, and similar cases, even though articles so purchased and used might be among those classified in the act. The purpose of the act was to regulate the handling of the articles referred to in connection with the business of junk dealer, junk buyer, etc., as such. See generally, on the subject of statutory regulation of junk dealers and junk shops, note to Weadock v. Judge, 16 Ann. Cas. 720, 722 (156 Mich. 376, 120 N. W. 991, 132 Am. St. R. 527), and note to Commonwealth v. Maletsky, 24 L. R. A. (N. S.), 1168 (203 Mass. 241, 89 N. E. 245).

2. Error is assigned because the court did not hold that sections 10, 11; 13, 16, 17, 23, 24, 26, and 29, as a whole, are arbitrary, unreasonable, and deny to the plaintiffs due process of law and the equal protection of the laws as guaranteed by the fourteenth amendment to the constitution of the United States. We think what has been said in the preceding division of this opinion, on the proper exercise of the police power, answers the objection urged against these sections of the ordinance; and we hold that the court did not err in not holding them invalid for any of the reasons assigned.

3. Section 14 of the ordinance provides that it shall be unlawful for any common carrier to knowingly receive or accept for delivery from any junk dealer, junk peddler, junk buyer, or junk gatherer, or any agent, servant, or employee of such persons, any junk covered by the ordinance, purchased by the dealer, etc., for shipment or consignment, unless the same is "tagged" as provided by the ordinance. It is insisted that this section is unreasonable and illegal, because the mayor and general council have no authority to enact such ordinance, and because it is in conflict with section 2634 of the Civil Code of 1910, which vests in the railroad commission power to make and enforce such reasonable rules as

may be necessary in order to compel and require the several railroad companies of this State to promptly receive, receipt for, forward, and deliver to destination all freight which may be tendered or received by them for transportation. And further, because it is in violation of storage rule 10 of the railroad commission of Georgia, which provides that whenever freight of any character, proper for transportation, whether in car-load quantities or less, is tendered to a railroad company at its customary place for receiving shipments, and correct shipping instructions are given, such railroad company shall immediately receive the same and issue bills of lading therefor. While it is alleged and argued that the railroad commission has such rule as above indicated, there is nothing in the record to show that such is the fact; and it is incumbent on the party asserting it to show that the railroad commission has exercised the authority conferred on it and has made such rule, and the plaintiffs in error have not done that. This court can not take judicial cognizance of the fact that the commission has or has not adopted such a rule. *Wadley Southern Ry. Co.* v. *State,* 137 *Ga.* 497, 503 (73 S. E. 741).

4. Section 17 of the ordinance provides that each applicant for license to do business as a junk dealer shall execute a bond payable to the city in the sum of $1,000, and shall pay an occupation tax of $300 per year; and that each applicant to do business as a junk peddler, junk buyer, or junk gatherer shall each execute a bond in the sum of $250 payable to the city, and pay an occupation tax of $50 per year; all and each of said taxes to be payable annually in advance. Error is assigned because the court declined to rule that such ordinance is unreasonable and arbitrarily discriminates against the plaintiffs, and exceeds the power of the city to impose an occupation tax. We can not say, as a matter of law, that the amounts so fixed are unreasonable or arbitrary, or that the ordinance denies to the plaintiffs due process of law and equal protection of the laws, or that it discriminates against them. See *Hazleton* v. *Atlanta,* 144 *Ga.* 775 (87 S. E. 1043) ; City of Grand Rapids *v.* Braudy, 32 L. R. A. 116 (6), and note (105 Mich. 670, 64 N. W. 29, 55 Am. St. R. 472). Such ordinance is not open to the objection that it places a double tax on junk dealers who are also junk gatherers, buyers, etc., because there is one tax on "dealers" and another tax on "gatherers, buyers," etc. The busi-

nesses have been reasonably classified, and the taxes are imposed on the different classes of business; and if one person conducts two or more kinds of business so classified, he is liable to an occupation tax on each business conducted. *Ray* v. *Tallapoosa,* 142 *Ga.* 799 (83 S. E. 938).

5. The ordinance is not arbitrary and unreasonable as depriving minors of "a clear right" of engaging in any business with the consent of their parents, or without such consent if the parents be dead, because it forbids such dealers to employ any minor under the age of 21 years to work in his junk yard, or on a junk wagon, or as an apprentice, or in any capacity in connection with the junk business, nor because the ordinance prevents the buying or receiving of junk from minors under the age of 18 years. It is the policy of the law to protect minors from temptations which may endanger their health or morals, or from employment which deprives them of an education. Our law prohibits the employment of minors under the age of 14 years in any mill, factory, laundry, manufacturing establishment, or place of amusement. Acts 1914, p. 88. It prohibits any owner or person controlling a billiard-table, pool-table, or ten-pin alley from permitting any minor to play or roll on the same, without the consent of the parent or guardian. Penal Code, § 406. It prohibits the furnishing of cigarettes, cigarette tobacco, cigarette paper, or any substitute therefor to a minor, under penalty. Penal Code, § 491. It prohibits the sale of liquor to minors. Penal Code, § 444. It prohibits the sale or furnishing to any minor of a pistol, dirk, bowie-knife, or sword-cane, except under circumstances justifying their use in defending life, limb, or property. Penal Code, § 350. Any person keeping a table, or dealing a game, who shall permit a minor to play and bet thereat, or any person of full age who shall gamble with a minor at certain specified games of cards, is guilty of a misdemeanor. Penal Code, § 393. These are but a few instances in which the law throws its protecting shield around minors in order that their morals may not be corrupted ere they reach manhood's estate when they have more discretion and are stronger in character than they would otherwise have been had all kinds of temptations been permitted to be thrown around them. See Freund on Police Power, § 259 et seq.; *Arthur* v. *State,* 146 *Ga.* 827, 832 (92 S. E. 637), and authorities cited; *Jaques & Tinsley Co.* v. *Carstarphen Co.,* 131

*Ga.* 1 (62 S. E. 82) ; Kidd &c. Co. *v.* Musselman, 217 U. S. 461 (30 Sup. Ct. 606, 54 L. ed. 839). We may add, in answer to the assignment of error that the plaintiffs are not permitted to contract with minors under 18 years of age, that the general rule is that a contract made with a minor under 21 years of age is void. Civil Code (1910), § 4233. None of the above statutes, so far as we are aware, have ever been declared illegal or void for any of the reasons here assigned. They declare a sound public policy, and should be upheld by the courts.

6. The ordinance is not invalid because the license to be issued to a junk dealer under it is required to have printed, stamped, or written upon it as a part thereof, "that same shall be revoked, ipso facto, in case of conviction in the recorder's court, either of the applicant or any of his servants, agents, or employees, on account of a conviction for violation of any of the provisions of this ordinance [or] of the State law against buying and receiving stolen property." Such regulation, properly construed, means that the license can be forfeited only for cause. See *Cassidy* v. *Macon,* 133 *Ga.* 689 (2), 690 (66 S. E. 941).

7. An ordinance which makes it unlawful for any junk dealer, etc., to melt, cut, mash, or disfigure any junk or material such as is described in section 13 of the ordinance, purchased by him, until the lapse of ten days from the inspection thereof, "provided that the chief of police shall have power to shorten the time here-inafter provided, in cases of emergency, when he shall have reasonable cause to believe that said material is not stolen property and has been acquired in good faith and without any violation of any law of the State of Georgia or of the City of Atlanta," is not open to the objection that it is arbitrary and unreasonable, and denies to the plaintiffs due process of law and the equal protection of the laws. Nor is the ordinance or any part thereof invalid for any other reason assigned; and the court did not err in denying an injunction.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent, and Beck, P. J., who dissents from the ruling in the sixth division of the opinion.*