## CLEIN *et al. v.* CITY OF ATLANTA *et al.*

1. A combination of individuals, to procure the passage and enforcement of a municipal ordinance which is not ultra vires, unconstitutional, unreasonable, or void for any reason, does not render such ordinance invalid, although their purpose in procuring its enactment and its enforcement is to drive their competitors out of business, and to thus swell their profits.
2. The mayor and general council of the City of Atlanta had the power to enact the ordinance in question, relating to auction sales of jewelry, clocks, silverware, etc., and the same is not unreasonable.
3. This ordinance does not violate the due-process clauses of the Federal and State constitutions.
4. The courts can not inquire into the motives of the mayor and general council of Atlanta in enacting this ordinance, and can not set the same aside if it is not unreasonable, ultra vires, or unconstitutional.

No. 5806. JULY 15, 1927.

Petition for injunction. Before Judge Pomeroy. Fulton superior court. December 6, 1926.

Benjamin Clein and Michael Ellman filed their petition against Nat Ulman, and other individuals, and the City of Atlanta, in which they made the following allegations: The defendants, excepting the City of Atlanta, are engaged in the retail jewelry business within said city. All of the individual defendants conspired, more than two years ago, for the purpose of driving out of business petitioners and such other persons as were at the time engaged in the selling of jewelry and other like goods, either wholly or partially, at auction in said city. Said conspiracy has existed for more than two years, and is still continuing. The business of selling jewelry and like goods is peculiar, in that the general public can be and frequently is charged for goods prices that have no relation to cost or value, but the dealers charge whatever they can get, and charge extortionate prices, the profits running as high as from one hundred to three hundred per cent. The defendants charge upon such basis. Petitioners sell such goods at auction, and the prices realized at such auction depend in large measure upon what the purchasers are willing to pay, and are generally far below the scale charged by defendants. Petitioners have long done a considerable

Conspiracy, 12 C. J. p. 540, n. 4; p. 582, n. 63.
Constitutional Law, 12 C. J. p. 920, n. 44; p. 922, n. 69; p. 1279, n. 75.
Monopolies, 41 C. J. p. 178, n. 33.
Municipal Corporations, 43 C. J. p. 297, n. 60, 61; p. 374, n. 76.

business by private sale and at auction, and defendants have long been exceedingly impatient and resentful against petitioners because of the fact that the business done by them interferes with and limits defendants' business. Petitioners have two places of business, one at 29 West Mitchell Street, and one at 58-60 Decatur Street, where they not only sell jewelry at retail and private sale, but do an extensive loan business, taking jewelry and like articles in pawn. Thereby they acquire a considerable stock of jewelry and allied articles, a large part of which is bought and sold in the regular course of business, and the rest of which consists in unredeemed pledges the title to which has either partly or fully passed to petitioners. They have held on lease a place of business at 73 Peachtree Street in Atlanta, for which they are under contract to pay and do pay rent at the rate of $500 per month. Said lease runs until May 1, 1927. Petitioners rented said place with the view of conducting, among other things, a jewelry auction business there, and the carrying on of such business will be the justification of the very heavy rents they have to pay. They have put in a stock of jewelry and other articles in said place, which is worth probably $25,000, in addition to the stock of goods they have in the other two places. It cost them to remodel said place of business, and to equip the same with fixtures, more than $3,000. They have been in business in Atlanta for twenty-four years, the last part of which they have been in partnership under the trade name of Citizens Loan Association Jewelers & Brokers. Petitioners conduct a strictly honorable, upright, and honest business. They have never misrepresented their goods, and resort to no tricks to deceive customers. They have a large line of customers, and the good will of their business is worth a very large sum of money, probably fifty thousand dollars. They have, for a long time, at intervals, conducted auction sales of jewelry and other allied goods. They have never violated any law, and have never been arrested. No case has ever been made against them either in the municipal or State courts. They enjoy a good reputation in the commercial world, and have a large established credit in the banks. They have borrowed as much as $15,000 at a time, and have no doubt their credit will be regarded in the banks as justifying a loan of $75,000.

Petitioners have never interfered with their competitors in any illegal or improper manner, but have at all times treated their com-

petitors fairly and justly. Their business has sharply competed with defendants, and the reasonable prices they receive for goods have necessarily, to some extent, limited the business done by defendants. At this time there is no other jewelry auction house doing business in Atlanta, except May Brothers, who are selling out their stock at auction, for the purpose of retiring from business. During the last two years, one or two other houses engaged in a line of business similar to that of petitioners have been forced out of business by the persecutions instituted by the defendants, as will be set out. Among the wrongs done by said conspirators against jewelry auctioneers have been efforts to enforce and collect extortionate taxes by the city, under ordinances which petitioners allege to be unconstitutional, police court prosecutions for failure to pay such taxes, vexatious police court proceedings against jewelers selling at auction, and efforts more or less successful to secure discriminating legislation against jewelry auctions. Defendants and other persons engaged in the same line of business have organized themselves into a corporation or society, which, as petitioners believe, is called the Retail Jewelers Association, one of the principal objects of which is to engage in the activities indicated, in restraint of commerce, and for the purpose of harassing persons in the line of business of petitioners, and driving them out of business. During the summer of 1925 the defendants, as individuals or as such association, employed counsel and paid large sums of money to secure the framing of a law and the lobbying of the same through the State legislature. Petitioners attach as an exhibit a copy of a circular letter in regard to said matter, sent out by persons co-operating therein. As the result of said efforts, the act of 1925 (Acts 1925, p. 310) was passed, absolutely prohibiting jewelry auctions. Petitioners are advised that said law is unconstitutional and void, for numerous reasons, one of which is that the body of the act contains matter different from that expressed in its title; another is that said act deprives persons selling jewelry at auction of their property without due process of law, in violation of the fourteenth amendment to the constitution of the United States, and the similar provision in the constitution of the State; and another is that it denies to persons who sell jewelry at auction the equal protection of the law, in violation of said provisions of the Federal and State constitutions. A part of the conspiracy consists

in the activities of the defendants to stop petitioners and others from selling jewelry at auction during the Christmas season, which is the profitable period of doing business, and thereby deprive petitioners of the opportunity to make profit, as well as to increase the business of the defendants. For the purpose of carrying out said conspiracy, defendants recently caused pressure to be brought on the city council of Atlanta, and in pursuance thereof that council, on November 1, 1926, passed an ordinance the substantial parts of which are as follows:

"Section 1. No person, firm, or corporation shall offer for sale or sell at public auction any diamonds or other precious or semi-precious stones or imitations thereof, watches, clocks, jewelry, silverware, or cut glass between the hours of six o'clock p. m. and six o'clock a. m.

"Section 2. Be it further ordained that no person, firm, or corporation shall engage in said business without first depositing with the clerk of council a good and sufficient bond payable to the city and conditioned to pay the city, or any one else suing in its name for their use, for injuries or damages received on account of dishonest or fraudulent conduct in the administration of said business so licensed. The amount of said bond shall be the sum of five thousand ($5,000.00) dollars, and shall be given for each fiscal year. Said bond shall provide that any person or persons injured by the dishonest, fraudulent, or improper conduct of said business may sue on said bond for their own use, and the recovery, if any, shall be payable to said person or persons. This section does not amend section 483, but is a separate provision covering jewelry auctioneers.

"Section 3. Violations of the provisions of this ordinance shall be punishable, upon conviction in the recorder's court, of a fine of not less than $50.00, or more than $200.00, or a sentence upon the public works not exceeding 30 days, either or both in the discretion of the recorder.

"Section 4. The provisions of this ordinance shall not extend to judicial sales or to executors' or administrators' sales.

"Section 5. This ordinance does not repeal any existing ordinance with reference to jewelry auctions, except in so far as the same may conflict therewith."

During the entire time said ordinance was before council or its

committees, the defendants and others were present in large numbers, pressing for its enactment, and when it was finally passed there were present in the council chamber about seventy-five retail jewelers, who received its enactment with tumultuous applause. Said ordinance deals with a matter with which the City of Atlanta has no authority to deal. It is not within the police power of the city. It was enacted solely for carrying out the purpose of the conspiring defendants, who are numerous and influential, and of whom the City of Atlanta is politically afraid. In undertaking to forbid sales of jewelry and other articles, or to require a bond for the protection of the public, the city was invading the powers of the State itself. If said act of 1925 is not unconstitutional, section 2 of said ordinance undertakes to occupy a field already occupied by the State, and permits the business to be carried on by giving a bond, when the State forbids it entirely. For this reason said ordinance is void. Said ordinance is unreasonable, because it imposes harsh and inequitable terms upon a business that is entirely legitimate; because the city can no more prohibit the business of dealing in jewelry and allied articles at auction than it can prohibit the dealing in any other article; because there is nothing in the jewelry business that makes it any more improper to sell such articles at auction than to sell such articles at private sale; and because no reason exists which makes it any more improper to sell jewelry at night than to sell it in the daytime. If said ordinance is enforced petitioners will suffer enormous losses. It is void because it was not enacted in good faith, as a matter of policy, but solely for the purpose of discriminating against petitioners and their business, and in favor of the business of the defendants. No reason is recognized by the law which makes it any more improper to sell goods at night than in the day, and to prohibit sales at public outcry than to prohibit private sales. Said ordinance is unconstitutional because it deprives them of their property in violation of the due-process clauses of the Federal and State constitutions.

Petitioners pray for temporary and permanent injunction, restraining each of the defendants from taking any steps to enforce said ordinance, or to interfere in any way with petitioners in the conduct of their business; and for general relief.

The defendants demurred upon the grounds that the petition

sets out no cause of action against them; and that it sets out separate and distinct causes, (1) against the individual defendants for conspiracy, and (2) against the City of Atlanta, to restrain it from enforcing said ordinance. The court sustained the demurrers and dismissed the petition. To this ruling petitioners excepted.

*Alexander & McLarty* and *W. P. Carpenter*, for plaintiffs.

*J. L. Mayson, C. S. Winn,* and *Alston, Alston, Foster & Moise,* for defendants.

HINES, J. (After stating the foregoing facts.)

1. Does the petition set forth a cause of action against the individual defendants? The case against these defendants is based upon the existence of an alleged conspiracy between them in procuring and in seeking to have enforced against petitioners, with the purpose of driving them out of business, the ordinance which is set out in the statement of facts, and which petitioners allege to be without the competency of the mayor and general council of the City of Atlanta to pass, as well as unreasonable and unconstitutional. If the mayor and general council of the city possessed the power to pass said ordinance, and if it is not unreasonable, unconstitutional, or void, it is clear that no cause of action is set out against the individual defendants or against the City of Atlanta. A conspiracy is a combination either to accomplish an unlawful end, or to accomplish a lawful end by unlawful means. *Brown* v. *Jacobs' Pharmacy Co.*, 115 *Ga.* 429 (41 S. E. 553, 57 L. R. A. 547, 90 Am. St. R. 126). It is well settled that in an action on the case for conspiracy, the conspiracy per se is not the gravamen of the charge, but may be both pleaded and proved as aggravating the wrong of which the plaintiff complains, and enabling him to recover in one action against all as joint tort-feasors. *Woodruff* v. *Hughes*, 2 *Ga. App.* 361 (58 S. E. 551); *National Bank of Savannah* v. *Evans*, 149 *Ga.* 67 (99 S. E. 123). So it follows that if the individual defendants combined to procure and have enforced this ordinance, they would not be liable merely on account of the conspiracy, but would only be liable for some wrong done the petitioners in pursuance of the conspiracy. It further follows that if this ordinance is not ultra vires, is not unreasonable, or unconstitutional, or void for any reason, the defendants would not commit any tort in procuring its passage and in seeking to enforce it. Every person has the right to press and procure by

proper means the enactment of legislation, either State or municipal; and when enacted, every person can use legitimate means to enforce such legislation. We shall undertake to show, in dealing with this action against the city, that this ordinance is not ultra vires, is not unreasonable, and is not unconstitutional or void upon the grounds on which petitioners attack it. Therefore the petition sets forth no cause of action against the individual defendants, and the trial judge properly sustained their demurrer.

2. Does the petition set forth any cause of action against the City of Atlanta? Petitioners seek to enjoin this ordinance upon the grounds, (a) that the mayor and general council of the City of Atlanta were without power to enact it, (b) that it is unreasonable, and (c) that it is unconstitutional because it violates the due-process clauses of the Federal and State constitutions. The mayor and general council of the City of Atlanta are clothed with authority, under the police power of the city, to pass an ordinance regulating the business of auctioneers of jewelry, and such an ordinance would not be an unjustified regulation of and interference with the business of petitioners, on account of lack of power in the governing authorities of the city to pass it. *Clein* v. *Atlanta,* 159 *Ga.* 121 (124 S. E. 882). Lawful trades or businesses are subject to regulation under the police power vested in the City of Atlanta. What such regulations shall be, and to what particular trade, business, or occupation this will apply, are questions for the city to determine. Their determination comes within the proper exercise of its police power; and unless the regulations are so utterly unreasonable and extravagant that the property and personal rights of the citizens are unnecessarily, and in a manner wholly arbitrary, interfered with or destroyed without due process of law, they do not exceed the limits of the police power of the city to pass. *Shurman* v. *Atlanta,* 148 *Ga.* 1, 11 (95 S. E. 698). Is this ordinance unreasonable? Petitioners assert that its unreasonableness consists in the fact that it imposes harsh and inequitable terms upon those engaged in the business of auctioning jewelry; that the city can no more prohibit the business of dealing in jewelry and allied articles at auction than it can prohibit the dealing in any other article; that it is no more improper to sell such articles at auction than to sell them at private sale; and that no reason exists which makes it any more improper to sell jewelry

at night than to sell it in the daytime. We have seen above that the mayor and general council of the City of Atlanta are clothed with authority, under the police power of the city, to pass an ordinance regulating the business of auctioneers of jewelry. This power involves the right of classification. While it is perfectly legal to auction jewelry, the city can regulate that business, and leave unregulated jewelry dealers who sell at private sale. So the ordinance is not unreasonable upon the ground that it discriminates against those engaged in auctioning jewelry, and in favor of dealers in jewelry who sell at private sale.

Does this ordinance impose harsh and inequitable terms upon those engaged in the business of auctioning jewelry? By its first section it prohibits the offering for sale or selling of certain articles between the hours of six o'clock p. m. and six o'clock a. m. We can not say that this feature of the ordinance is so arbitrary and such an unlawful interference with the business of petitioners as to be unreasonable. In *Jenkins* v. *State,* 119 *Ga.* 430 (46 S. E. 629), this court held that "It was within the province of the General Assembly of this State, in the exercise of its police powers, 'to make it unlawful to transport seed-cotton in or from the county of Harris, or from one place to another in said county, between the hours of sunset and sunrise, except when carried from the field where picked to the place of storage on the premises of the owner, and to prescribe a penalty for the violation' " of the act containing these provisions. In *Bazemore* v. *State,* 121 *Ga.* 619 (49 S. E. 701), this court declared, that, "Under the police power, laws may be passed for regulating common occupations which from their nature afford peculiar opportunity for imposition and fraud." In that case the court was dealing with an act which prohibited the sale of seed-cotton between the 1st of August and the 20th of December in each year. As we have seen, the regulation of the business of jewelry auctioneers falls within the police power of the city. This power is very broad. *Jackson* v. *Beavers,* 156 *Ga.* 71, 75 (118 S. E. 751). In *Biddles* v. *Enright,* 239 N. Y. 354 (146 N. E. 625), the New York Court of Appeals held that a statute forbidding auction sales at night in large cities had such relation to the peace, safety, and protection of citizens as to come within the police power. In *People* v. *Weller,* 237 N. Y. 316 (143 N. E. 205, 38 A. L. R. 613), the New York Court of Appeals held that

a statute forbidding auction sales at night was a reasonable effort to insure fair public sales, to prevent fraud and deception, and to protect purchasers from the dangers lurking in the darkness of the night, and was not such arbitrary legislation as to be unconstitutional. The cases cited deal with statutes regulating the sale of jewelry at auction. While this is so, they throw light upon the question which we now have under consideration. A municipality is a minor State. *City of Atlanta* v. *Holliday,* 96 *Ga.* 546, 553 (23 S. E. 509). In *Gilham* v. *Wells,* 64 *Ga.* 192, this court held that the authorities of the town of Stone Mountain, though having power by charter to grant or withhold licenses to retail liquor, and to establish police regulations generally, could not, after granting a license, and while retaining the fee paid for the same, pass an ordinance requiring all retailers to close doors and forbear to sell whilst, and at all times when, "any denomination of Christian people" are holding divine service anywhere in the town, the ordinance being silent as to any and all other worshippers. The invalidity of this ordinance was apparently put upon its discrimination in favor of the denominations of Christian people as against any and all other worshippers. We may remark that this decision was rendered when intoxicating liquors were in better repute than they now are.

In *Watson* v. *Thompson,* 116 *Ga.* 546 (42 S. E. 747, 59 L. R. A. 602, 94 Am. St. R. 137), it was decided that "A municipal corporation can not, under the general welfare clause usually found in municipal charters, prohibit one from carrying on a lawful vocation on Christmas day, when there is nothing in the character of the business carried on which is calculated to interfere with the peace, good order, and safety of the community." The ordinance dealt with in that case prohibited the carrying on of a lawful vocation on Christmas day, both in the daytime and nighttime. In *Morris* v. *Rome,* 10 *Ga.* 532, an ordinance prohibiting the retail of spirituous liquors by those to whom licenses had been granted, within the City of Rome, after the hour of ten o'clock at night, was held not to essentially impair the right to retail under the license granted, but was only a regulation of the exercise of it for the benefit of the peace, order, and good government of the city. In *Sanders* v. *Elberton,* 50 *Ga.* 178, it was decided that a town council, having power to license and regulate the sale of spirituous liquors,

could legally, in issuing a license, confine the sale of liquor to a particular room in a house. In *Badkins* v. *Robinson,* 53 *Ga.* 613, this court upheld the validity and reasonableness of an ordinance which prohibited the sale by retail of fresh meats and vegetables during market hours at any other place than the market-house. In *Rothschild* v. *Darien,* 69 *Ga.* 503, an ordinance making it penal to "open any store for the sale of merchandise of any kind or sort, works of necessity, etc., excepted," on the Sabbath day, was held not covered by the State law, and a valid ordinance which could be enforced. In *Braddy* v. *Milledgeville,* 74 *Ga.* 516 (58 Am. R. 443), an ordinance prohibiting disreputable women from standing or loitering about the streets or stores at night, unless on unavoidable business, was held to be "a police regulation within the power of the municipal authorities to make." In *Manor* v. *Bainbridge,* 136 *Ga.* 777 (71 S. E. 1101), an ordinance prescribing the territory within which "near beer" could be sold, and making it unlawful to sell that article without such territory in the city limits, was held to be reasonable. In Holsman *v.* Thomas, 112 Ohio St. 397 (147 N. E. 750), an ordinance providing that no jewelry should be sold at auction for a period greater than sixty days in one year, and that the auctioneer must have been a resident of the municipality for one year, and must have had a regular stock of jewelry for six months of that year, was held to be reasonable and valid. In City of Roanoke *v.* Fisher, 137 Va. 75 (119 S. E. 259), it was held that an ordinance prohibiting auctioneers of jewelry from conducting such business between the hours of six p. m. and eight a. m. was not unreasonable. In City of Buffalo *v.* Marion, 34 N. Y. Supp. 945 (13 Misc. 639), an ordinance prohibiting the auctioning of watches after 6 o'clock p. m. was held valid. The legislature has undertaken to prohibit the sale of jewelry at auction, by the act of 1925, supra.

It is true that the authority to a municipality to regulate does not confer the power to prohibit entirely. *Purvis* v. *Ocilla,* 149 *Ga.* 771 (102 S. E. 241). We think this is a sound principle and should not be departed from, although there is respectable authority to the effect that an ordinance authorizing the licensing of auctioneers, but forbidding the sale at auction of jewelry or watches, was valid. State *v.* Bates, 101 Minn. 301 (112 N. W. 67) ; Mogul *v.* Gaither, 142 Md. 380 (121 Atl. 32). Counsel for plaintiffs in

error rely upon Hayes v. Appleton, 24 Wis. 542, and People v. Gibbs, 186 Mich. 127 (152 N. W. 1053, Ann. Cas. 1917B, 830). In those cases the statutes involved prohibited all auctions at night. So we are of the opinion that the provision of this ordinance prohibiting the sale of jewelry at auction between 6 o'clock p. m. and 6 o'clock a. m. is not unreasonable on the ground that it prohibits the sale of jewelry at auction. This provision is not such an impairment of the right to conduct this business as amounts to an absolute prohibition of the business. As the sale of jewelry at night affords opportunity for fraud and imposition upon the buyers, we can not say that the prohibition against conducting this business at night is unreasonable.

Is the requirement that an auctioneer shall give bond in the sum of $5,000, payable to the city, and conditioned to pay the city or any one suing in its name for their use, any damages sustained on account of the dishonest or fraudulent conduct of said business, arbitrary and unreasonable? In *Hazleton* v. *Atlanta,* 144 *Ga.* 775 (87 S. E. 1043), this court was dealing with an ordinance regulating the licensing and operation of jitneys or jitney-buses within the city. The ordinance declared that it was unlawful for any person to act as driver of any motor-bus without complying with certain requirements, one of which was that each person, firm, or corporation operating any such bus should, before the same was placed in operation, file with the city clerk an indemnity bond in the sum of $5,000 for each vehicle, conditioned for the payment of any damages sustained by any person or property, caused by the operation of any such vehicle, for which the owner would be liable under the laws of this State. A majority of this court held in that case that this requirement was not unreasonable and oppressive as to the amount thereof. In *Shurman* v. *Atlanta,* supra, this court was dealing with an ordinance regulating the business of junk-dealers, and requiring each junk-dealer to execute a bond in the sum of $1000, payable to the city, conditioned to pay the city, or any one suing in its name, for damages sustained on account of dishonest, fraudulent, immoral, or improper conduct of the administration of the business of the junk-dealer. The majority of this court held that this provision as to the bond was not unreasonable, and did not arbitrarily discriminate against the class of junk-dealers embraced in said ordinance. By like logic and

reasoning, we can not say that this requirement of a bond is unreasonable. Auctioneers are often transient persons. Sometimes they are irresponsible financially. Purchasers at auction sales, who are damaged by fraud of the auctioneers, would for these and other reasons be left remediless. In People *v.* Grant, 126 N. Y. 473 (27 N. E. 964), a statute requiring auctioneers to obtain license and to give bond was held reasonable and valid. The other provisions of this ordinance do not seem to be so arbitrary and unreasonable as to authorize us to declare this ordinance to be invalid.

3.  In view of what has been said above, we do not think that this ordinance violates the due-process clauses of the Federal and State constitutions. It does not deprive petitioners of their property without due process of law, and does not deny to them the equal protection of the law. It applies to all auctioneers of jewelry. It was competent for the mayor and general council of the City of Atlanta to make this classification, and to pass reasonable regulations governing the conduct of this business. The Supreme Court of the United States has many times affirmed the general proposition that it is not the purpose of the fourteenth amendment, in the equal-protection clause, to take from the States the right and power to classify the subjects of legislation. It is only when such attempted classification is arbitrary and unreasonable that the court can declare it beyond the legislative authority. That a law may work hardship and inequality is not enough. Many valid laws and ordinances, from the generality of their application, necessarily have that effect. Necessarily the legislature or municipality must be allowed a wide field of choice in determining the subject-matter of laws and ordinances. Jeffrey Mfg. Co. *v.* Blagg, 235 U. S. 571 (35 Sup. Ct. 167, 59 L. ed. 364). It is only where the legislative or municipal action is arbitrary and has no reasonable relation to a purpose which it is competent for government to effect, that the legislature or municipality transcends the limits of their power. Where there is reasonable relation to an object within the governmental authority, the exercise of legislative or municipal discretion is not subject to judicial review. Chicago etc. R. Co. *v.* McGuire, 219 U. S. 549 (31 Sup. Ct. 259, 55 L. ed. 328). In Baccus *v.* Louisiana, 232 U. S. 334 (34 Sup. Ct. 439, 58 L. ed. 627), the Supreme Court of the United States held that the State had the power to prohibit sales by itinerant vendors of any drug, nostrum,

ointment, or application of any kind intended for the treatment of any disease or injury, while allowing the sale of such articles by other persons.  This being so, we can not hold that this ordinance violates the due-process clauses of the Federal and State constitutions, in that it denies to petitioners the equal protection of its laws, or deprives them of their property without due process of law.   City of Roanoke v. Fisher, supra; *Shurman* v. *Atlanta,* supra; Gundling v. Chicago, 177 U. S. 183 (20 Sup. Ct. 633, 44 L. ed. 725) ; Biddles v. Enright, supra.

4.   It is strenuously urged by counsel for the plaintiffs that the individual defendants pressed and procured the passage of this ordinance with sinister and evil motives.  They assert that the purpose of the defendants was to stifle competition, and to drive plaintiffs and other auctioneers out of the business of auctioneering jewelry and allied articles.  It is further alleged that these defendants formed an association to accomplish these selfish purposes, and that they overawed the mayor and general council of the City of Atlanta, and forced this body, in fear of the power exerted by it, to pass this ordinance.  The courts can not inquire into the motive of the defendants in pressing and procuring the enactment of this ordinance, or of the mayor and general council of Atlanta in enacting the same; nor can they set the same aside, if it is not arbitrary and unreasonable, is not ultra vires, or is not unconstitutional.  *Puckett* v. *Young,* 112 *Ga.* 578, 582 (37 S. E. 880) ; People v. Gibbs, supra; Gardner v. Bluffton, 173 Ind. 454 (90 N. E. 898, Ann. Cas. 1912A, 713) ; 7 McQuillin, Municipal Corporations, § 732.                    *Judgment affirmed.   All the Justices concur.*