47343, 47344, 47345.    SMITH et al. v. NATIONAL UNION FIRE INSURANCE COMPANY (three cases).

HALL, Presiding Judge. The origins of these consolidated appeals were three wrongful death actions against the defendants Smith, who are licensed motor carriers, and their two insurers. Following either a jury verdict for the plaintiffs or a negotiated settlement, National Union paid out substantial sums. It had earlier filed cross claims against the Smiths for reimbursement of any payments it would be obligated to make. Both the Smiths and National Union filed motions for summary judgment on the cross claims, stipulating (in effect) there were no factual issues and that one or another should have the judgment. The court granted National Union's motion.

The basis for National Union's liability to the plaintiffs is that it had filed a certificate of insurance with the Public Service Commission which, until 30 days after written

notice of cancellation, provides coverage for the benefit of the general public under the law of Georgia and rules of the commission. *Code Ann.* § 68-612. National Union concedes that it did not give the required notice to the commission before the wrongful death and that it was therefore legally obligated to pay the plaintiffs.

The basis for its claim for reimbursement from the Smiths is that, as between them, there was no coverage because the policy had lapsed. The policy period stated in the contract of insurance was from April 26, 1964, to April 26, 1965. There was no renewal of the policy and no further premium or any other form of consideration was given by the Smiths. They had, in fact, procured a liability insurance contract from another company for the following year. The wrongful death occurred on November 12, 1965. The policy itself provided for reimbursement in those instances in which the company made a payment it would not otherwise be obligated to make except for the certification to a public authority. However, the contractual provision need not be relied upon since the same result is required by the rules of the Public Service Commission and by *Garden City Cab Co. v. Fidelity & Cas. Co.,* 80 Ga. App. 850 (57 SE2d 683).

That National Union made a form certification to the Public Service Commission stating the policy was effective "until canceled" (and notice given) does not mean the contract of insurance could not terminate in any other way except cancellation; and certainly no hypothetical rules of the Public Service Commission could purport to extend or renew a contract between private parties which they did not intend and for which there was no consideration. The rules can only provide that until proper notice is given to the commission, the policy is effective for the benefit of the public.

The only distinction between the *Garden City* case and this one is that the former involved the cancellation of the policy and a municipal ordinance where this one involves the termination of the policy by lapse of time and a

State statute. In both cases there was no policy in effect between the insurer and the alleged insured at the time of the injury to the public. By substituting the words "terminated or expired" in place of the word "canceled" and the word "statute" in place of the word "ordinance" in the *Garden City* opinion, the result here is clear. "The policy of insurance at the time of the injury to the member of the public had been canceled and the premium returned. It was therefore in force only insofar as was required by the ordinance which prevented the taxicab company from operating without the required bond. Clearly the endorsements when construed in conjunction with the ordinance as herein outlined leave the bond in force only for the protection of the public and not for the protection of the insured, and such was manifestly the intention of the parties . . . Except for the ordinance there was no liability on the part of the insurance company after it had canceled the policy in accordance with its terms and had refunded the unearned premium. Except for the ordinance the insurance company could not have been sued in the same action with the insured by a member of the public. Except for the ordinance the plaintiff, after it had canceled the policy in accordance with its terms, would have had no interest in any subsequent claim against the insured and would not have adjusted the same . . . Consequently, when the liability of the insurance company ceased under the terms of the original policy, any liability incurred thereafter under the provisions of the city ordinance was such a liability as might be recovered by it under the indemnity endorsement." *Garden City Cab Co. v. Fidelity & Cas. Co.,* supra, p. 853. See also *St. Paul Fire & Marine Ins. Co. v. Fleet Transport Co.,* 116 Ga. App. 606 (158 SE2d 476).

The Smiths also contend the payment made in settlement of one case was "voluntary" and therefore not recoverable from them. The contention is without merit. The payment in the *Garden City* case was also a settlement.

The trial court properly granted National Union's motion for summary judgment.

*Judgment affirmed. Bell, C. J., Eberhardt, P. J., Deen, Clark and Stolz, JJ., concur. Pannell, Quillian and Evans, JJ., dissent.*

ARGUED JULY 6, 1972—DECIDED NOVEMBER 29, 1972— REHEARING DENIED DECEMBER 19, 1972—

*Walton Hardin, Walter N. Adams,* for appellants.

*Barwick, Bentley & Binford, Gilbert B. Meredith, M. Cook Barwick,* for appellee.

QUILLIAN, Judge, dissenting. The following facts should be noted: National Union issued a comprehensive automobile liability policy to the Smiths which listed the policy period from April 26, 1964, to April 26, 1965. Since this policy was under the provisions of *Code Ann.* § 68-612, National Union filed a certificate with the Georgia Public Service Commission which listed that the policy (CA971388A) was effective from April 26, 1964 "until canceled." The form further recited "if continuous—complete 'until canceled.'" The automobile collision which is the subject of the original suit occurred on November 12, 1965. However, it was not until July 16, 1966, that the Georgia Public Service Commission received notice of cancellation from National Union. The cancellation was effective August 13, 1966. The policy issued to the Smiths contained the following endorsement: "Cancellation of the policy and this endorsement may be effected only after giving 30 days notice in writing to the public or Federal authority with which such certificate has been filed."

National Union contends it is entitled to reimbursement from the Smiths because of provisions of the policy that "the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in making such certification." In its argument to this court National Union cites

the rules of the Georgia Public Service Commission and sets out that the policy was issued in compliance with the Georgia Public Service Commission's rules and was controlled by such rules. In this connection, National Union states that the policy follows Rule 35 of the Georgia Public Service Commission; that although the certificate to the Georgia Public Service Commission recites that the policy was effective until canceled, this rule was subsequently changed after the issuance of the policy but before the collision in question. In support of this argument is the affidavit of National Union's agent which recites that the notice given to the Georgia Public Service Commission indicated the policy was in effect "until canceled" which was in compliance with the Georgia Public Service Commission's rules at that time, but that the rule was subsequently rescinded in July of 1964.

Although there is considerable foreign authority to the contrary (see e.g., Ohran v. National Automobile Ins. Co., 82 Cal. App.2d 636 (187 P2d 66)), the case of *Garden City Cab Co. v. Fidelity & Cas. Co.,* 80 Ga. App. 850 (2) (57 SE2d 683), cited by the majority, is apparently controlling. However, it is applicable only if there was a cancellation or termination of the policy between National Union and its insureds, the Smiths. This then is the determinative issue in the case.

In ascertaining whether the contract could be terminated or could lapse, the Georgia Public Service Commission's Rules are exceedingly vital. If the Rules allowed a policy to lapse after a definite time then National Union might rely on that fact plus the ruling in *Garden City Cab Co. v. Fidelity & Cas. Co.,* 80 Ga. App. 850, supra, to sustain its contention. However, if the policy must continue until canceled then National Union must make a showing that it met any formal cancellation requirement which the Rules specified. *Gilley v. Glens Falls Ins. Co.,* 81 Ga. App. 71 (58 SE2d 218). For the policy provision can not prevail over the terms of the statute, and rules promulgated pursuant thereto, which must be strictly followed. See *State Farm Mut.*

*Auto. Ins. Co. v. Reese,* 116 Ga. App. 59, 60 (156 SE2d 529); 45 CJS 83, Insurance, § 449.

Although in National Union's cross claim a portion of Rule 35 of the Georgia Public Service Commission is set forth, there was no attempt made to introduce the rule on motion for summary judgment. Moreover, there is no showing as to when the particular rule was effective or what rules were effective for the time period involved in these cases. A statement by the Underwriting Manager of National Union is not sufficient to establish the rules of the Georgia Public Service Commission or their status at a particular time. Furthermore, this court cannot take judicial notice of the Georgia Public Service Commission Rules. *Atlanta Gas Light Co. v. Newman,* 88 Ga. App. 252, 254 (76 SE2d 536), and cits. *Shurman v. City of Atlanta,* 148 Ga. 1 (3) (95 SE 698).

Under the Georgia Public Service Commission's Rules in effect at the inception of the contract the period of insurance coverage was "until canceled" and apparently notice of cancellation from National Union to the Smiths was necessary. If such rules were changed what did they provide? Did they apply to the instant contract, that is did they apply retroactively or retrospectively to a contract already entered into? Did they contain any reference to any notice which must be given the insured?

Here, absent the applicable rules and their effective date, we have no concrete showing as to whether the contract could terminate or lapse at the end of a one-year period. In such situation the granting of a summary judgment should not be approved.

I am authorized to state that Judges Pannell and Evans concur in this dissent.