363 So.2d 151 (1978)
NATIONAL INDEMNITY COMPANY, Appellant,
v.
PENNSYLVANIA NATIONAL MUTUAL INSURANCE COMPANY, Appellee.
PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, Etc., Appellant,
v.
The MacNEILL GENERAL AGENCY and Alan Boud Flack, Appellees.
Nos. 77-1039, 77-1068.
District Court of Appeal of Florida, Third District.
September 26, 1978.
Rehearing Denied November 2, 1978.
Kuvin, Klingensmith & Lewis and R. Fred Lewis, Coconut Grove, for Nat. Indem.
Wicker, Smith, Blomqvist, Davant, McMath, Tutan & O'Hara and Richard A. Sherman, Miami, for Pennsylvania Nat.
Blackwell, Walker, Gray, Powers, Flick & Hoehl and Bradford Swing, Miami, for McNeill Agency and Flack.
Before PEARSON, HUBBART and KEHOE, JJ.
HUBBART, Judge.
The central question presented for review by these consolidated appeals is whether an insurance company can cancel an insurance policy previously issued to a Florida motor carrier regulated by the Florida Public Service Commission, when such policy has been filed with and approved by the Florida Public Service Commission, without first giving the Florida Public Service Commission 30 days notice under Section 323.06(3), Florida Statutes (1977). We hold that such 30 days notice is an essential prerequisite under the above statute for *152 such an insurance cancellation. Accordingly, we reverse.

A
The facts of this case are substantially undisputed. In 1970 the Pennsylvania National Mutual Casualty Insurance Company ("Penn") issued a motor vehicle liability insurance policy to Fargo-Anchor Moving & Storage, Inc. ("Fargo-Anchor"), a motor transport company currently regulated by the Florida Public Service Commission. On July 21, 1970, Penn duly filed this insurance policy with the Florida Public Service Commission (then known as the Florida Railroad & Public Utilities Commission) which was approved. The certificate of insurance provided in part as follows:
"Such insurance shall not expire nor shall cancellation take effect until after thirty (30) days written notice has been given by the undersigned to the Florida Railroad and Public Utilities Commission at its office in Tallahassee, Florida."
On January 23, 1971, at 12:01 a.m. Penn purported to cancel the above-stated insurance policy with Fargo-Anchor for nonpayment of premium by giving notice to Fargo-Anchor. Penn failed at that time, however, to give notice to the Public Service Commission of such cancellation. Subsequent thereto, on January 29, 1971, Fargo-Anchor obtained a replacement automobile liability insurance policy from National Indemnity Company ("National") which in turn sent a certificate of insurance to the Public Service Commission on the same day. On February 5, 1971, the Commission approved the above policy.
On February 18, 1971, a vehicle owned by Fargo-Anchor collided with an automobile in Punta Gorda, Florida, resulting in the death of two people and certain personal injuries to two other people. At the time of this accident, both Penn and National had valid certificates of insurance on file and approved by the Public Service Commission. On March 17, 1971, Penn filed with the Public Service Commission a notice of its prior cancellation of insurance on Fargo-Anchor.
On August 13, 1971, the surviving injured plaintiffs and the executrix of the estate of the deceased claimants filed suit on the subject accident against Fargo-Anchor, National and others [but not against Penn] in the Circuit Court for the Eleventh Judicial Circuit of Florida. Ultimately, the trial court ruled that National's insurance policy did not provide coverage on the subject accident because of a certain geographical limit contained in the policy of insurance. This court reversed such a finding of no coverage. Vollmer v. Fargo-Anchor Moving & Storage, Inc., 288 So.2d 523 (Fla. 3d DCA 1974). Subsequent thereto, National settled with the plaintiffs herein on their claims in the amount of $106,074.07.
On June 6, 1975, National filed a declaratory judgment action against Penn seeking a judgment in its favor for restitution or indemnification of the above settlement plus costs and attorney's fees in the Circuit Court for the Eleventh Judicial Circuit of Florida. National contended in its complaint that Penn's insurance policy on Fargo-Anchor was in effect at the time of the subject accident and that Penn should, therefore, be required to pay for some or all of the settlement judgment entered for the injured claimants herein.
Penn filed an answer denying that its policy with Fargo-Anchor was in effect at the time of the subject accident. In addition, Penn filed a second amended third party complaint against Frank R. MacNeill and Son, Inc. and its insurer Alan Boud Flack as one of the Underwriter's of Lloyd's of London, contending that if its insurance policy was in effect at the time of the subject accident, the third party defendant and his insurer were negligent in not properly notifying the Florida Public Service Commission because they were Penn's authorized agent employed to perform such duties. MacNeill and its insurer filed a third party answer denying negligence and contending that the Penn insurance policy had been cancelled at the time of the subject accident.
*153 Based on the above facts, all parties moved for summary judgment. The trial court granted the summary judgment in favor of Penn on the main action finding that the Penn policy was not in effect at the time of the subject accident. Based on the same ground, the trial court granted summary judgment in favor of MacNeill and its insurer on Penn's third party complaint. National appeals from the summary judgment in favor of Penn on the main claim; and Penn takes a precautionary appeal from the summary judgment entered in favor of MacNeill on its third party action.

B
The decision in this case turns on an interpretation of Section 323.06(3), Florida Statutes (1977). All parties agree that at the time of the subject accident herein (1) Penn had failed to notify the Public Service Commission that its insurance policy on Fargo-Anchor had been previously cancelled for nonpayment of premium, and (2) National had filed and the Public Service Commission had approved another insurance policy on Fargo-Anchor. National contends that the Penn policy was in effect at the time of the subject accident because the above statute requires an insurance company to give the Public Service Commission 30 days notice before it can cancel a policy with a motor carrier regulated by the Public Service Commission. Penn and MacNeill counter that the above statute makes an exception to the 30 days notice requirement where, as here, the Public Service Commission has approved another insurance policy which covers the motor carrier in question.
Section 323.06(3), Florida Statutes (1977) provides in pertinent part as follows:
"No certificate or permit shall be valid until such bond has been filed and approved, and no such bond so accepted shall be canceled by the company issuing the same except upon 30 days' notice to the commission, and upon such notice being given by the company issuing said bond or bonds, the certificate or permit of the person or the corporation giving bond shall be revoked, unless a new bond shall be filed and accepted before the date for the cancellation of the said bond. However, the applicant may, in the discretion of the commission, be allowed to file in lieu of bond an insurance policy, which shall be approved by the commission, with some casualty or insurance company authorized to do business in the state." [Emphasis added].
The statute means exactly what it says. No certificate or permit issued by the Public Service Commission to a motor carrier or other applicant regulated by said Commission shall be valid until a bond or insurance policy on such carrier has been filed with and approved by the Public Service Commission; no such bond or insurance policy can be cancelled by the underwriting surety or insurance company involved except upon 30 days notice to the Public Service Commission; upon such notice of cancellation being given by the surety or insurance company, the motor carrier's certificate or permit to operate in this state shall be revoked unless a new bond or insurance policy is filed with and accepted by the Public Service Commission before the date of cancellation on the first bond or insurance policy. We are unable to read the "unless" clause in the statute to modify the 30 days notice provision as contended by Penn and MacNeill. The "unless" clause is separated from the 30 days notice provision in the statute by an intervening clause which provides for revocation of the motor carrier's certificate or permit. The "unless" clause therefore modifies only the intervening and immediately preceding clause.
All agree that the 30 days notice provision in the statute is an exception to the general statutory prohibition against a surety or an insurance company cancelling a bond or insurance policy previously filed and approved by the Public Service Commission on a regulated Florida motor carrier. Only upon the surety or insurance company giving 30 days notice to the Public Service Commission can such a cancellation take place. If the "unless" clause is read as *154 an exception to the 30 days notice exception (an awkward construction at best) as urged by Penn and MacNeill, we are back to the general rule prohibiting cancellation if the "unless" clause is applicable. No surety or insurance company could cancel their above-described bond or insurance policy by giving 30 days notice to the Public Service Commission if (as the "unless" clause provides) a new bond or insurance policy is filed with and accepted by the Public Service Commission before the date of cancellation on the first bond or insurance policy. In such event, the first surety or insurance company's bond or insurance policy would be frozen indefinitely and could not thereafter be cancelled, a result which hardly furthers Penn and MacNeill's cause. The legislature could not have intended such an unreasonable or absurd result, and we, therefore, decline to adopt the urged construction of the statute which leads to such a result. State Farm Mutual Automobile Insurance Co. v. O'Kelley, 349 So.2d 717, 719 (Fla. 1st DCA 1977); George v. State, 203 So.2d 173, 175-76 (Fla. 2d DCA 1967); Sharon v. State, 156 So.2d 677, 679 (Fla. 3d DCA 1963); State v. Willis, 124 So.2d 48, 51 (Fla. 1st DCA 1960).
We are supported in our decision herein by the analogous decisions of three other courts which have construed the above statute in much the same way as we do in this opinion. American Automobile Insurance Co. v. Pajor, 316 So.2d 612 (Fla. 4th DCA 1975); Kessler v. Pennsylvania National Mutual Casualty Insurance Co., 531 F.2d 248, fn. 9 (5th Cir.1976); Midstate Hauling Co. v. Reliable Insurance Co., 437 F.2d 616 (5th Cir.1971). In addition, Rule 25-5.31[1] of the Public Service Commission is in complete accord with our construction of the statute. Finally, Penn's certificate of insurance for Fargo-Anchor itself provides that cancellation of the applicable insurance coverage herein could not take effect until 30 days written notice had been given by Penn to the Public Service Commission. We read the applicable statute to require precisely such a provision.
The summary final judgments under review are reversed and the cause remanded to the trial court for further proceedings in accordance with the views expressed in this opinion.
PEARSON, Judge (dissenting).
I would affirm upon the principle that a legislative act should not be construed so strictly as to defeat the obvious and more plausible intention of the lawmakers. See the principles of law in Gracie v. Deming, 213 So. 294, 296 (Fla. 2d DCA 1968). Common sense would indicate that neither the motor carriers nor the public could expect two liability policies to exist at the same time in a situation such as this. Of course, the public eventually pays for the insurance policies deposited by motor carriers. Therefore, to hold a first insurer liable after the second insurer has been substituted and accepted by the regulatory body is waste. If the legislative language were so clear as to need no interpretation, then the courts could not substitute their judgment; but here, the language is not, in my view, so clear. I would follow the administrative interpretation of the statute shown by the acceptance of the new policy as a substitute. See Greyhound Lines, Inc. v. Yarborough, 275 So.2d 1 (Fla. 1973); see also Blair Contracting Company v. Mason, 211 So.2d 15 (Fla. 1968).
The close reasoning of the majority cannot be faulted by me. I also recognize that the cited case of American Automobile Insurance Company v. Pajor, 316 So.2d 612 (Fla. 4th DCA 1975), is authority for the majority decision. It is simply my view that the majority overlooks a higher legal principle.
NOTES
[1] This rule provides that cancellation of an insurance policy previously filed with and approved by the Public Service Commission shall not "take effect until after thirty (30) days notice in writing by the company shall have first been given to the Florida Public Service Commission at its office in Tallahassee, Florida, said thirty (30) days notice to commence to run from the date notice is actually received at the office of the Commission." Fla. Admin. Code Rule 25-5.31.