S98Q0715. DeHART et al. v. LIBERTY MUTUAL INSURANCE COMPANY.
(509 SE2d 913)

FLETCHER, Presiding Justice.

Craig and Jeannie DeHart filed this action in federal court seeking a declaration that a liability insurance policy issued by Liberty Mutual Insurance Company was in effect when their son was injured in an automobile collision in North Carolina. The Eleventh Circuit U. S. Court of Appeals has asked this Court whether the Georgia Public Service Commission's "continuous coverage" provision applies outside the state of Georgia and whether state law permits the stacking of a motor carrier's liability insurance policies. We conclude that the state regulation applies to the same territory outside the state as the motor carrier's insurance policy and that an injured person may recover under that policy when the insurance company has failed to file a termination form with the Georgia PSC.

FACTS

The PSC regulations require insurance companies to certify insurance coverage of motor carriers by filing a Form E and to provide notice of termination of coverage by filing a Form K. In June

1986, Liberty Mutual certified to the PSC that it provided liability insurance coverage for Senn Trucking Company of Georgia in a policy effective May 27, 1986. In November 1986, it filed a Form K notifying the PSC that the policy would be cancelled in 30 days, but filed a Form E reinstating the policy before the cancellation took effect. Although the policy expired in May 1987, Liberty Mutual did not file another Form K notifying the PSC that coverage had terminated. On May 27, 1987, Senn Trucking acquired a liability insurance policy from National Continental Insurance Company. On May 26, 1988, a driver for Senn Trucking caused a collision on a North Carolina highway that severely injured Adam Shane DeHart. The DeHarts sued the trucking company and both insurance companies in state court. The trial court denied summary judgment to Liberty Mutual, but the Court of Appeals of Georgia reversed, holding that Liberty Mutual had been improperly joined because the accident occurred outside the state of Georgia.[1]

The DeHarts settled with National Continental for the policy limits of one million dollars and with Senn Trucking for $125,000. The settlement agreement stated that it was not intended to affect the litigation between the DeHarts and Liberty Mutual. The DeHarts then filed this action in federal district court seeking a declaration that Liberty Mutual was liable based on the PSC regulation that motor carrier liability insurance policies are continuous until the PSC receives actual written notice that the coverage will terminate. The district court held that Liberty Mutual's failure to file the termination form with the PSC meant that the policy was effective on the date of the accident and granted summary judgment to the DeHarts. Liberty Mutual appealed and the Eleventh Circuit certified the following two questions to this court:

> 1. Does the GPSC regulatory provision mandating that motor carrier liability insurance policies properly registered with the GPSC are continuous until not less than thirty days after the GPSC receives actual written notice that such coverage will terminate — i.e., the continuous coverage provision — have extraterritorial application . . . when a motor vehicle collision occurs outside the state of Georgia?
> 2. Where an insurer has certified to the GPSC that it insures a Georgia motor carrier and, notwithstanding the expiration of the policy in question, fails to notify the GPSC that such certification has been canceled prior to the loss, and the motor carrier subsequently purchases a second pol-

---

[1] See *Liberty Mut. Ins. Co. v. DeHart*, 206 Ga. App. 858, 859 (426 SE2d 592) (1992).

icy also in effect at the time of the loss, does Georgia law permit extension of the GPSC continuous coverage provision to provide "stacking" of the two policies with respect to the motoring public?[2]

## MOTOR CARRIER LAWS AND REGULATIONS

The Motor Carrier Act of 1931 gave the Georgia PSC the power to regulate the business of persons engaged in the transportation of persons and property for hire on any public highway in this state.[3] The act required motor contract carriers to obtain a certificate of public convenience and necessity. To obtain the certificate, the carrier had to give bond with adequate security or file a policy of indemnity insurance for the protection of the public against injury caused by the motor carrier's negligence.[4] The PSC's rules provide that any insurance policy shall continue until 30 days after written notice of the cancellation is received in the PSC's office.

> Surety bonds, policies of insurance, endorsements, or certificates of insurance . . . shall be continuous and shall not be cancelled or withdrawn until after thirty (30) days' notice in writing by the insurance company, surety or sureties, motor carrier, or other party . . . has first been given to the Commission at its offices in Atlanta, Georgia, which period of thirty days shall commence to run from the date such notice is actually received at the office of the Commission.[5]

## EFFECT OF GEORGIA REGULATIONS ON OUT-OF-STATE COLLISIONS

The DeHarts do not seek to recover from Liberty Mutual under the terms of its liability insurance policy with Senn Trucking. By its terms, the policy expired on May 27, 1987. Instead, the DeHarts seek coverage as third-party beneficiaries of PSC regulations. Despite the expiration of its policy, Liberty Mutual failed to file a Form K notifying the PSC of the policy's cancellation. As a result, the DeHarts argue that the continuous coverage regulation mandates coverage for

---

[2] *DeHart v. Liberty Mut. Ins. Co.*, 133 F.3d 856 (11th Cir. 1998).
[3] OCGA § 46-7-52 (1992) (repealed 1996); see OCGA § 46-7-2 (Supp. 1998) (motor common carrier act amended to include motor contract carriers).
[4] OCGA § 46-7-58 (1992) (repealed 1996); see OCGA § 46-7-12 (Supp. 1998).
[5] Rules of Georgia Public Service Commission 1-8-1-.07 (1989).

injuries incurred in a collision outside the state and the stacking of Liberty Mutual's policy on top of coverage afforded by the replacement policy that National Continental provided.

1. The Court of Appeals of Georgia has rendered conflicting opinions on the application of Georgia law regulating motor carriers when an accident occurs outside the state. In *National Union Fire Insurance Co. v. Marty*,[6] one panel of the court of appeals held that Georgia's direct action statutes, which permit joinder of the motor carrier and its insurance carrier in the same action, did not have extraterritorial effect. Although the direct action statutes do not expressly restrict joinder of insurance carriers to causes of action arising on Georgia highways, the court of appeals relied on other statutory provisions in the chapter regulating motor carriers on the public highways "of this state."[7] The court concluded that the trial court should have granted summary judgment to the insurance company because the plaintiff was injured on a Florida highway. Another court of appeals panel found *Marty* controlling when it determined that the DeHarts could not bring a direct cause of action against Liberty Mutual in state court.[8]

When the same issue of joinder of the insurance carrier arose again, the whole court refused to follow the decisions in *Marty* and *DeHart I*. Instead, the court held in *Johnson v. Woodard*[9] that joinder of the insurer and the motor carrier in the same action "is not prohibited merely because the collision occurred on a highway in South Carolina."[10] The majority found no principled reason to deny joinder to a person injured by a state-regulated carrier that is sued in Georgia. Rejecting the statutory interpretation in *Marty*, the *Johnson* majority concluded that "mere reference to use of Georgia highways in some sections of the Act does not mean that a person has a cause of action . . . only if an injury occurs on Georgia highways or streets."[11] Thus, while the court in *Marty* would not assume that the legislature intended to enact laws applying outside the state, the court in *Johnson* assumed the opposite. It concluded that the joinder statute applied to all out-of-state collisions because the legislature did not expressly prohibit joinder in that situation.

While the court of appeals in those cases dealt with the direct action statute and this case deals with the PSC's continuous coverage regulation, the cases are similar to the extent that they concern the

---

[6] 197 Ga. App. 642 (399 SE2d 260) (1990).
[7] See id. at 643 (quoting OCGA §§ 46-7-1, 46-7-2, 46-7-51, 46-7-36, 46-7-50).
[8] *DeHart I*, 206 Ga. App. at 859.
[9] *Johnson v. Woodard*, 208 Ga. App. 41 (429 SE2d 701) (1993).
[10] Id. at 43.
[11] Id. at 44.

ability of persons injured in out-of-state accidents to sue Georgia motor carriers in Georgia based on state law. As the conflicting opinions of the court of appeals state, however, the language of the motor carrier act does not directly address whether state law applies to collisions that occur outside the state.

Based on the purpose of the motor carrier act and PSC regulations, we conclude that the continuous coverage provision applies to motor vehicle collisions that occur outside the state of Georgia. The state motor carrier acts were enacted to protect members of the general public against injuries caused by the negligence of a Georgia motor carrier.[12] The statutes do not preclude the application of state law to motor carriers with a Georgia certificate of public convenience and necessity for injuries they cause outside Georgia. The policy in this case covered accidents that occurred throughout the United States during the policy period. Given the purpose of the motor carrier laws and the nature of interstate travel, we conclude that the continuous coverage provision applies to both Georgia and out-of-state residents who are injured in other states by Georgia motor carriers.

## EFFECT OF CONTINUOUS COVERAGE PROVISION ON INJURED MEMBERS OF THE PUBLIC

2. The continuous coverage regulation provides that it shall not be cancelled until 30 days after the insurance company gives written notice to the commission. By its express terms, the regulation continues coverage until the PSC actually receives notice of cancellation.[13] Other courts provide persuasive authority that an injured member of the public may recover under the continuous coverage rule based on the insurance company's failure to file a Form K terminating coverage.[14]

Unlike many cases addressing the effect of the continuous coverage regulation, this case does not involve litigation between the insurer and insured or between two insurance companies. In those situations, courts generally have held that the insurance company

---

[12] See OCGA §§ 46-7-58 (a) (1992), 46-7-12 (a) (Supp. 1998); *Ross v. Stephens*, 269 Ga. 266, 267 (496 SE2d 705) (1998); *Grissom v. Gleason*, 262 Ga. 374, 377-378 (418 SE2d 27) (1992).

[13] Cf. 49 C.F.R. § 387.7 (b) (1) & (c) (1998) (permitting termination of insurer's liability on the effective date of the replacement insurance policy or surety bond or by giving 35 days' written notice of cancellation to the insured motor carrier).

[14] See, e.g., *Metro Transp. Co. v. North Star Reinsurance Co.*, 912 F.2d 672, 682, 688 (3d Cir. 1990) (applying Pennsylvania law, holding that insurance policy remained in effect until 30 days after insurer's notice of cancellation, despite insurer's attempt at retroactive cancellation and passage of a state regulation providing for termination on the effective date of the replacement certificate of insurance).

that provided the expired policy is not liable to its insured or another insurer based on the continuous coverage regulation.[15] In a case involving two insurance companies, the Florida Supreme Court held that the predecessor insurance company that provided motor carrier liability coverage and failed to file a notice of policy expiration with the Florida PSC was not liable to the successor insurance company because the purpose of the notice requirement was to protect the public against injury caused by a motor carrier's negligence, not to diminish a current insurer's liability.[16] That court expressly reserved the issue in our case: whether the predecessor insurance company was liable to third-party beneficiaries of the policy when the company failed to file the required notice of expiration.[17]

When it considered that question, the Court of Appeals of Georgia held that the insurance company was liable to injured members of the public based on the continuous coverage provision of the PSC rules. In *Elliott v. Leavitt*,[18] the court held that the insurance company that had not cancelled its certified coverage at the time of the collision, despite the expiration of the policy, was a proper defendant in a wrongful death action. Since the insurance company did not give the required notice of cancellation to the commission, it was legally obligated to pay the plaintiffs. "[U]ntil proper notice is given to the commission, the policy is effective for the benefit of the public."[19]

In this case, Liberty Mutual filed a form certifying that it provided liability insurance for Senn Trucking effective May 27, 1996. That certificate of insurance stated that it could not be cancelled without giving 30 days notice of cancellation in writing to the com-

---

[15] See, e.g., *Smith v. National Union Fire Ins. Co.*, 127 Ga. App. 752, 753-754 (195 SE2d 205) (1972) (although insurance company was liable to injured plaintiffs based on its failure to give the required notice of cancellation to the commission, it was entitled to reimbursement from the insured since the policy had lapsed and there was no coverage); see generally 2 Lee R. Russ, Couch on Insurance § 31:19 (3d ed. 1998) (citing cases on the effect of insurer's failure to notify government agency of cancellation).

[16] See *Canal Ins. Co. v. Insurance Co. of N. Am.*, 424 So2d 749, 750 (Fla. 1982) (approving *Insurance Co. of N. Am. v. Morgan*, 406 So2d 1227 (Fla. Dist. Ct. App. 1981) and disapproving *National Indem. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 363 So2d 151 (Fla. Dist. Ct. App. 1978)).

[17] See id. at 749; see also *Country Mut. Ins. Co. v. Millers Nat'l Ins. Co.*, 534 NE2d 151, 156 (Ill. App. Ct. 1989) ("Were a member of the general public [rather than an insurance company] seeking compensation for losses by virtue of an uncancelled certificate, the result, in all likelihood, would be different."). But see *CIGNA Ins. Co. v. Jones*, 850 SW2d 687 (Tex. App. 1993) (refusing to hold insurance company liable to injured third party on a cancelled insurance policy when insured's license had expired and state commission had rejected an application for license renewal for lack of insurance).

[18] 122 Ga. App. 622, 631-632 (178 SE2d 268) (1970).

[19] *Smith v. National Union*, 127 Ga. App. at 753; see also *Garden City Cab Co. v. Fidelity & Casualty Co.*, 80 Ga. App. 850, 854 (57 SE2d 683) (1950) (policy that had been canceled without five-days notice to city clerk was not in force between parties but only in force concerning members of the public).

mission. Although Liberty Mutual cancelled the policy, it did not file written notice of the cancellation with the commission. Because the policy continued until the PSC received proper written notice of cancellation and Liberty Mutual did not file a Form K cancelling the policy with the commission before Adam DeHart was injured on May 28, 1988, we conclude that Liberty Mutual is liable to the DeHarts based on the continuous coverage provision of the Georgia PSC regulations.

*Questions answered. All the Justices concur.*

CARLEY, Justice, concurring.

I concur fully in the majority's holding that, until the insurer has given proper notice of termination to the Public Service Commission (PSC), the motor carrier's liability policy remains in effect and provides coverage for injuries resulting from an extraterritorial collision. I write separately to explain why, in my opinion, *Liberty Mut. Ins. Co. v. DeHart*, 206 Ga. App. 858 (426 SE2d 592) (1992) does not compel the contrary result in this particular case.

*Liberty Mut. Ins. Co. v. DeHart* involved the same parties as this appeal and, in that case, the Court of Appeals held that former OCGA § 46-7-58 (e) did not authorize a direct cause of action against the motor carrier's insurer if the injuries did not occur in Georgia. Under the "law of the case" rule, "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be." OCGA § 9-11-60 (h). Even if the law subsequently changes, the appellate decision remains binding precedent as between the parties thereto. *Fulton-DeKalb Hosp. Auth. v. Walker*, 216 Ga. App. 786, 787 (1) (456 SE2d 97) (1995). Thus, the decision of the Court of Appeals in *Liberty Mut. Ins. Co. v. DeHart* would be controlling in all subsequent proceedings in that case.

Although this appeal does involve the same parties as *Liberty Mut. Ins. Co. v. DeHart*, it arises in the context of separate litigation wherein a different question is presented for resolution. Here, there is no contention that the DeHarts have a statutory right to pursue a direct cause of action against the insurer prior to obtaining a judgment against the motor carrier. Indeed, they have already settled their claim against the alleged tortfeasor. In this case, the DeHarts brought a declaratory judgment action seeking to establish that Liberty Mutual Insurance Company provided coverage to the negligent motor carrier at the time the collision occurred in North Carolina. They do not rely upon former OCGA § 46-7-58 (e) or any other statute. The DeHarts' claim is based upon the continuous coverage provision of the PSC's rules. Clearly, this issue of coverage vel non is distinct from whether the DeHarts had a statutory right to bring a

direct action against Liberty Mutual Insurance Company in the first instance. Thus, *Liberty Mut. Ins. Co. v. DeHart* does not constitute the law of this case, which is a separate declaratory judgment action "based on different grounds, even though the action is between the same parties." *Strauss v. Strauss*, 231 Ga. 248, 249 (200 SE2d 878) (1973). Compare *Fulton-DeKalb Hosp. Auth. v. Walker*, supra at 787 (1). The majority correctly resolves the merits of the DeHarts' claim, holding that the PSC regulation benefits the public to the same extraterritorial extent as the motor carrier's insurance policy and that a party injured in another state is, therefore, entitled to recover if the insurer failed to file with the PSC the proper form for terminating the policy.

DECIDED DECEMBER 4, 1998 —
RECONSIDERATION DENIED DECEMBER 18, 1998.

*Winburn, Lewis & Barrow, Gene Mac Winburn, John J. Barrow,* for appellants.
*Carter & Ansley, Ben Kingree III, Patrick C. DiCarlo,* for appellee.