**Jason RAMIREZ, Plaintiff–Appellee,**

v.

**PROGRESSIVE PREFERRED INSURANCE COMPANY, Defendant–Appellant.**

No. 02–12274.

United States Court of Appeals, Eleventh Circuit.

Feb. 13, 2003.

Michael Lawrence Morgan, Shur, McDuffie, Brockman & Levielle, Atlanta, GA, Laurence J. Rabinovich, New York City, for Defendant–Appellant.

Gus L. Wood, Wood, Odom & Edge, P.A., Newnan, GA, for Plaintiff–Appellee.

Before ANDERSON, BIRCH and BARKETT, Circuit Judges.

ANDERSON, Circuit Judge:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA, PURSUANT TO O.C.G.A. § 15–2–9.

TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE JUSTICES:

This diversity action presents unanswered questions under Georgia law that are determinative of this appeal. We therefore certify questions to the highest court of the State for resolution. To assist the court in resolving these questions, we briefly lay out the facts of the case and the parties' arguments.

## I. BACKGROUND

This case concerns the obligations of a motor carrier and its insurer, specifically the extent of an insurer's liability when it fails to cancel a certificate of insurance filed with the State after a policy lapses. Georgia, like most other states, requires motor carriers to provide some assurance of financial responsibility in the event that a member of the public is injured by one of the carrier's vehicles. *See DeHart v. Liberty Mut. Ins. Co.*, 270 Ga. 381, 509 S.E.2d 913, 916 (1998) (noting that "[t]he state motor carrier acts were enacted to protect members of the general public against injuries caused by the negligence of a Georgia motor carrier."). Thus, in order to operate as a motor carrier in Georgia, the State requires a carrier to first obtain a certificate of public convenience. O.C.G.A. § 46–7–3.

Pursuant to rules adopted by the Georgia Public Service Commission ("PSC"), motor carriers that wish to obtain a certificate of public convenience are required to provide the PSC with a surety bond of $100,000 for bodily injury to or the death of one person, and $300,000 for bodily injuries to or the death of all persons injured or killed in an accident caused by a motor carrier. Ga. Pub. Serv. Comm'n Rule 1–8–1–.01. Alternatively, the carrier can provide the PSC with proof of insurance in the same amounts or more. *Id.* That proof can consist of either the actual insurance policy or a certificate of insurance that attests to the fact that the carrier has the minimum amount of insurance required under Georgia law. *Id.* Insurers that choose to submit a certificate of insurance rather than the actual policy must submit what is known as a "Form E" certificate, the contents of which are specifically prescribed. Ga. Pub. Serv. Comm'n Rule 1–8–1–.07(d).

On April 16, 1999, Paul Haney, on behalf of his company, West Georgia Transport Wrecker Service, submitted an application for insurance with the Appellant, Progressive Preferred Insurance Company (hereinafter "Progressive"). That application was accepted on April 22, 1999, and a policy covering Haney's company vehicles was issued by Progressive. The policy limited the total reimbursement for any injury or death involving a scheduled vehicle to $500,000. On April 23, 1999, Progressive sent a Form E certificate to the PSC on behalf of Haney attesting to the fact that he met the minimum insurance requirements for obtaining a certificate of public convenience. The PSC subsequently issued a certificate of public convenience to Haney authorizing his company to serve as a motor carrier in the State of Georgia.[1]

---

1. Progressive half-heartedly asserts here that the Form E it sent on behalf of Haney was never actually accepted by the PSC. Though there does appear to have been some back and forth between the Commission and Progressive with respect to the Form E, the fact that a certificate of public convenience was issued to Haney would seem to be *prima facie* evidence that the Form E was accepted by the Commission. *See* Ga. Pub. Serv. Comm'n Rule 1–8–1–.01 (noting that a certificate of public convenience "shall [not] be issued to a motor carrier ... unless and until" a certificate of insurance is "filed with and approved by the Commission."). In any event, Progressive conceded in the court below that the

On June 6, 1999, Progressive sent Haney an invoice for premiums due in the amount of $1,267.37. That payment was due on June 21, 1999, but it was never received. In early July, Progressive sent Haney a notice of cancellation, informing him that his policy would be cancelled on July 14, 1999, unless his payment was received. After Haney failed to make the necessary payments, his policy lapsed on July 15, 1999. Progressive did not cancel the corresponding certificate of insurance, however, until September 7, 1999.[2] On July 17, 1999, two days after the policy lapsed, a vehicle driven by Donald Costley and owned by Haney was involved in a multi-vehicle collision that resulted in the death of Frances L. Ramirez.

Ms. Ramirez's son, Jason Ramirez, subsequently initiated a wrongful death suit against Haney and his company, ultimately obtaining a judgment against them in the amount of $1 million. Mr. Ramirez then filed the instant suit against Progressive in the Superior Court of Coweta County, claiming that Progressive was required to pay $500,000 of the $1 million judgment on account of the certificate of insurance the company filed with the State of Georgia on Haney's behalf. Progressive then removed the case to the United States District Court for the Northern District of Georgia on the basis of diversity between the parties.

Both sides moved for summary judgment. Ramirez insisted that as a result of Progressive's failure to cancel the Form E before the accident, Haney's policy was still in effect at the time of the accident. Thus, according to Ramirez, Progressive was liable to pay $500,000 of the $1 million judgment. Progressive, by contrast, argued that the certificate only obliged it to pay the minimum amount required under Georgia law for an accident involving a single individual: $100,000. The district court sided with Ramirez and ordered Progressive to pay him $500,000.

## II. THE PARTIES' ARGUMENTS

■ The dispute here is not about whether Progressive is liable but instead the amount of its liability. There is no question but that Progressive's Form K cancellation notice was not received by the PSC until September 7, 1999, nearly two months after the accident occurred. Under Georgia law, once a certificate of insurance is filed with the PSC, the certification is said to be "continuous" and cannot be cancelled until thirty days after the insurance company provides written notice to the PSC. Ga. Pub. Serv. Comm'n Rule 1–8–1–.07(c). Thus, at the time the accident occurred, Progressive had certified to the State that it had issued to Haney a policy of insurance that would continue until cancellation by giving the PSC 30 days written notice, and that the policy provided insurance covering the obligations imposed upon motor carriers in order to operate in the State of Georgia. *See* Form E (discussed *supra* at 1060–1061). Accordingly, because of Progressive's certification, it is at the very least liable for $100,000 of the $1 million judgment obtained against Haney.

The remaining question is whether Progressive, by failing to cancel the certificate of insurance, extended the life of the underlying insurance policy. In other words, must an insurer cancel a certificate of insurance in order to also cancel the underlying policy, at least with respect to the

Form E was in effect on the date the accident occurred.

**2.** A carrier or insurer may cancel a certificate of insurance (Form E) by sending the PSC a "Uniform Notice of Cancellation" (Form K).

public at large.[3] Progressive insists that the answer is no, arguing that any liability that it has as a result of its failure to cancel the certificate of insurance is limited solely to the certificate of insurance. Progressive argues that because it only certified that it was providing the minimum amount of insurance required under Georgia law, it should only be held liable for that amount.

Progressive relies chiefly on the language of the PSC rules that govern motor carrier insurance obligations. Progressive first contends that the rules provide only for continuing effect of the particular instrument filed with the State. Progressive notes that the State permits a motor carrier to satisfy its obligation to the motoring public by filing, among other things, a surety bond, an insurance policy, *or* a certificate of insurance. Ga. Pub. Serv. Comm'n Rule 1–8–1–.01. The rules further provide that:

> Surety bonds, policies of insurance, endorsements, *or certificates of insurance* and other securities and agreements shall be continuous and shall not be cancelled or withdrawn until thirty (30) days notice in writing by the insurance company ... has been given to the Commission ....

Ga. Pub. Serv. Comm'n Rule 1–8–1–.07(c) (emphasis added). Relying on the disjunctive nature of the language in the regulation, Progressive argues that the rule clearly indicates that only the particular instrument filed with the state has continuing effect. And, because the instrument filed here was the certificate of insurance, not the actual policy, Progressive insists

that only that certificate remained valid prior to its submission of the Form K.

Progressive next points to language in the regulations that it contends limits an insurer's continuing obligation to the amounts specified in the regulations. Specifically, the rules provide that "[t]he liability of the insurance ... company on each motor vehicle for [the amounts listed in the schedule] shall be a continuing one." Ga. Pub. Serv. Comm'n Rule 1–8–1–.01. According to Progressive, this language contemplates insurer liability only for the minimum amount of insurance required for a motor carrier under Georgia law. Progressive insists that had the PSC intended to extend the life of the policy along with the certificate of insurance, the rule would have referred to an insurer's liability "under the policy" rather than its liability for the amounts listed.

Progressive also claims that even if Haney's policy was in effect at the time the accident occurred, that policy expressly limits the company's liability to the minimum amount of insurance required for motor carriers under Georgia law. In making this argument, Progressive relies heavily on the decision in *Ross v. Stephens*, 269 Ga. 266, 496 S.E.2d 705 (1998). There, the Georgia Supreme Court examined the extent of an insurer's liability for injuries resulting from an accident involving an unscheduled vehicle. Relying on the express terms of PSC Rule 1–8–1–.01, the court first noted that liability under a certificate of insurance exists even if the vehicle involved in the accident is not specifically referenced in the insurance policy. *Id.* at 707. The court then framed the issue before it:

> "courts generally have held that the insurance company that provided the expired policy is not liable to its insured or another insurer based on the continuous coverage regulation.").

---

**3.** There appears to be little question but that an insurer's failure to cancel a certificate of insurance does not extend the life of the policy as between the insurer and the insured. *See DeHart,* 509 S.E.2d at 917 (noting that

The question before us now is whether Rule 1–8–1–.01 engrafts the insurance policy's coverage to all the vehicles owned by the motor carrier, whether described or not, or whether the rule requires the issuer of an insurance policy to pay to the injured party only the statutory minimum set out in the rule for vehicles not described in the policy.

*Id.* at 708. After examining the rule, the court concluded that it did not specify the amount of the insurer's liability. The court then looked to the terms of the insurer's policy in order to determine what coverage was provided.

The court looked specifically at a "Form F" endorsement executed by the parties. That endorsement stated that it

amend[ed] the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations [promulgated by the PSC] to the extent of the coverage and limits of liability required thereby; provided only that the insured agrees to reimburse the [insured] for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in making such a certification.

*Id.* at 708. According to the court, the endorsement limited the insurer's liability to the minimum required by PSC regulations:

By executing the "Form F" endorsement, [the insurer] agreed to provide the automobile bodily injury and property damage liability coverage for losses caused by the motor common carrier's vehicles not specifically identified in the insurance policy that PSC Rule 1–8–1–.01 required. The endorsement went on to limit [the insurer's] liability regarding coverage for the unidentified vehicles to

that which was required by the PSC regulation: $100,000 per person injured or killed, with a $300,000 maximum per incident.

*Id.*

Progressive insists that the same result is required in this case because the applicable policy also contains a limitation in the event that liability is predicated on a certification rather than the actual terms of the policy. Specifically, Progressive points to the following provision in its policy with Haney:

If we are required by any applicable filing which we have made on your behalf to provide coverage not otherwise provided by the policy under this PART I—LIABILITY TO OTHERS, to any person or organization, the coverage provided hereunder for such person shall be the minimum coverage required by law. If we are required to make any payment under this policy that would not have been made except for the certification, you must reimburse us.

Subsection 1 of the "Limit of Liability" Section of Part I—LIABILITY TO OTHERS. Progressive insists that this provision, like the one examined in *Ross,* means that any coverage resulting from a certification rather than the actual terms of the policy is limited to the minimum amount required by law, which here would be $100,000.

Not surprisingly, Ramirez challenges these contentions. He claims that by filing the Form E, Progressive did in fact extend the life of the underlying insurance policy. He relies specifically on the language in that certificate, which provides that the insurer, by submitting the Form E, certifies that it has issued to a motor carrier

*[a] policy or policies of insurance* effective from 04/16/99 ... *continuing until cancelled as provided herein,* which,

by attachment of the Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement, has or have been amended to provide automobile bodily injury and property damage liability insurance covering the obligations imposed upon such motor carrier by [Georgia law].

(emphasis added). With respect to cancellation, the Form E later provides that:

This certificate and the endorsement described herein may not be canceled without cancellation of the policy to which it is attached. *Such cancellation may be effected by the company or the insured giving thirty (30) days' notice in writing to the State commission,* such thirty (30) days' notice to commence to run from the date notice is actually received in the office of the commission.

(emphasis added). According to Ramirez, this language plainly indicates that the "policy" continues until cancelled in the manner described by the certificate, and that the certificate requires 30 days notice to the PSC before cancellation becomes effective. Because Progressive failed to cancel the Form E prior to the date of the accident, Ramirez contends that the policy was still in effect when the accident occurred.[4]

Ramirez might have relied upon *DeHart v. Liberty Mutual Insurance Co.,* 270 Ga. 381, 509 S.E.2d 913 (1998), and argued that the Georgia Supreme Court has already held that an insurance policy continues in effect until the proper written notice of cancellation is given to the PSC. There, the Georgia Supreme Court relied upon PSC Rule 1–8–1–.07[5] and said:

Because the policy continued until the PSC received proper written notice of cancellation and Liberty Mutual did not file a Form K cancelling the policy with the commission before Adam DeHart was injured . . ., we conclude that Liberty Mutual is liable to the DeHarts based on the continuous coverage provision of the Georgia PSC Regulations.

*Id.* at 917. However, it does not appear that there was an issue in *DeHart* as to whether the limits of liability in the policy applied as opposed to the minimum limits of liability required by the regulations. Therefore, the statement that the "policy continued" may have been dicta, rather than a holding that the policy and its limits of liability continued in effect.[6]

Ramirez also challenges Progressive's reliance on *Ross.* He contends that *Ross* is inapposite because that case dealt with an unscheduled vehicle, i.e., one not covered by the specific terms of the policy.

4. At oral argument, Progressive's counsel suggested that the contents of the Form E are mandated by state law and that because it did not draft this form, it should not be considered evidence of an agreement regarding the length of the policy. Of course, the fact that the contents of this provision are required by the State could be viewed as evidence of the State's intent to continue not only the certificate but also the policy. We leave the ultimate resolution of this question to the Georgia Supreme Court.

5. *DeHart* quoted Rule 1–8–1–.07 as follows:

Surety bonds, policies of insurance, endorsements, or certificates of insurance . . . shall be continuous and shall not be can-

celled or withdrawn until after thirty (30) days' notice in writing by the insurance company, surety or sureties, motor carrier, or other party . . . has first been given to the Commission at its offices in Atlanta, Georgia, which period of thirty days shall commence to run from the date such notice is actually received at the office of the Commission.

509 S.E.2d at 915 (footnote omitted).

6. Moreover, even if the policy continues, the ultimate resolution of this case might still depend on the construction of Subsection 1 of the "Limit of Liability" section of Part I— LIABILITY TO OTHERS. *See* discussion below and second certified question.

Because that vehicle was not expressly covered by the policy, he contends that it was only appropriate for the court there to limit the insurer's liability to the statutory minimum. But, he points out, the vehicle here *was* covered by the policy. And, because the insurer failed to cancel the Form E until after the accident occurred, Ramirez insists that the coverage under the policy continued until the Form K cancellation notice was filed in September of 1999.

Having reviewed the parties' arguments, we conclude that this case presents novel questions under Georgia law that would be best answered, if at all possible, by that State's highest court. We have two primary concerns. First, we are uncertain with respect to the continuing coverage question. We have been unable to find any caselaw that definitively addresses the question of whether an insurer's failure to cancel a certificate of insurance continues the insurer's coverage under the actual policy and its limits of liability, as opposed to only a continuation of insurance coverage under the certificate and its minimum limits.

■ Second, even if the policy here is determined to have been in effect at the time of the accident, this case presents difficult questions under Georgia law with respect to the interpretation of that policy. Our specific concern relates to the provision described *supra* which states:

> If we are required by any applicable filing which we have made on your behalf to provide coverage not otherwise provided by the policy under this PART I—LIABILITY TO OTHERS, to any person or organization, the coverage provided hereunder for such person shall be the minimum coverage required by law. If we are required to make any payment under this policy that would

not have been made except for the certification, you must reimburse us.

Subsection 1 of the "Limit of Liability" section of Part I—LIABILITY TO OTHERS. Progressive argues this provision limits its liability in any situation where liability is required by some sort of state filing. Part I of the policy, however, addresses the *scope* of the coverage provided, and for that reason, Ramirez argues that this provision only limits the liability of the insurer where the filing imposes liability on an insurer that would otherwise fall outside the scope of its substantive coverage. Where the filing affects the length of the insurer's coverage rather than its scope, Ramirez contends that this provision does not apply at all.

For that reason, we cannot conclude that the result here is dictated by the decision in *Ross*. That case turned not on the continued effectiveness of the policy but rather the scope of coverage provided by the policy, specifically, whether it covered vehicles not specifically listed in an attached schedule. Though the case may have some persuasive value, we do not believe that it is on all fours with the instant suit. We therefore conclude that the effect of the limitation of liability provision presents a difficult interpretive question under Georgia law, one that could best be answered by seeking guidance from that State's highest court.

## III. QUESTIONS TO BE CERTIFIED

Having concluded that this case involves unanswered questions of state law that are determinative of this appeal and having found no clear, controlling precedent in the decisions of the Georgia Supreme Court, we certify the following questions of law to the Supreme Court of Georgia for instructions:

1. When a Form E filed with the PSC provides that an insurance company

has issued its insured an insurance policy "effective from 04/16/99 ... continuing until cancelled as provided herein" by "giving thirty (30) days notice in writing to the [PSC]," and when the policy lapses for nonpayment two days before the accident at issue but before the company has given 30 days notice to the PSC, is the insurer liable on the policy itself (i.e., a continuation of the policy and its limits of liability) to a third-party injured by the insured, as opposed to being liable on the certificate for the minimum coverage obligations imposed by law?

2. Does subsection 1 of the "Limit of Liability" section of Part I—LIABILITY TO OTHERS limit coverage to the statutory minimum *only* with respect to the scope of the substantive coverage described in Part I of the policy; or does that language also limit all coverage to the statutory minimum when the policy has lapsed as between the insurance company and its insured but before the insurer has provided the 30 day cancellation notice required under Georgia law.

Our statement of the questions to be certified is not meant to limit the scope of inquiry by the Supreme Court of Georgia. Similarly, an answer to one of the questions may render unnecessary resolution of the other one. In order to assist the court's consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the court.

QUESTIONS CERTIFIED.