313 Ga. 333
FINAL COPY

S21A1088.  WARD v. CARLTON.

NAHMIAS, Chief Justice.

The Commissioner of the Georgia Department of Corrections, Timothy Ward,[1] appeals the habeas court's order granting relief to petitioner Lewis Carlton on the ground that the trial court lacked authority to revoke Carlton's probation arising from his 2012 convictions by guilty pleas before the probationary period of the criminal sentences began. The Commissioner argues that the trial court was authorized by statute and precedent to revoke Carlton's probation before it began. Carlton responds that the habeas court was correct in granting relief because the trial court lacked such authority. He also claims that the trial court's actions rendered his

[1] Both Commissioner Ward and Robert Adams, Jr., Warden of the Jenkins Correctional Facility, were named as parties in the habeas court. The notice of appeal listed both parties in the case caption as "Respondents" but referred only to "Respondent Ward" in the text. In this Court, the appellant's brief includes only Commissioner Ward as the "Appellant/Respondent" in the case caption and in the text. It is unclear from the record why Warden Adams is no longer a party or if his removal was intentional. Carlton appears to remain incarcerated at the Jenkins Correctional Facility.

guilty pleas unknowing and invalid because he would not have entered the pleas had he known that his probation could be revoked before the probationary period began — claims that the habeas court ruled that the trial court should address in the first instance in the context of a motion for out-of-time appeal. For the reasons explained below, we conclude that the habeas court erred both in ruling that the trial court could not revoke Carlton's probation and in not ruling on Carlton's invalid-plea claims as well as other claims he asserted. We therefore reverse the habeas court's judgment in part and remand the case for further consideration consistent with this opinion.[2]

1. The record shows the following.

(a) *Carlton's 2012 Criminal Convictions and Sentences*

On September 20, 2012, a Cobb County grand jury indicted Carlton for three counts of interstate interference with custody, four counts of impersonation of a public employee (a Division of Family

---

[2] As discussed in footnote 10 below, Carlton does not dispute the habeas court's rejection of three of his claims, so those portions of the judgment stand.

and Children Services worker), two counts of burglary, two counts of criminal attempt to commit aggravated stalking, and two counts of criminal attempt to commit kidnapping. On October 15, 2012, Carlton entered a negotiated *Alford*[3] plea to three counts of impersonation of a public employee (Counts 4, 6, and 7), and the remaining counts were nolle prossed.

The trial court sentenced Carlton to serve five years in prison on Count 4, a consecutive split sentence of five years — one year to serve in prison and four years to serve on probation — on Count 6, and a consecutive five years to serve on probation on Count 7, for a total sentence of six years to serve in prison and nine years to serve on probation.[4] On the sentencing disposition form for Count 4, the general and other terms of probation section was struck through, as were the words "see Addendum 'A' for special conditions of

---

[3] See *North Carolina v. Alford,* 400 U.S. 25, 37 (91 SCt 160, 27 LE2d 162) (1970).
[4] The Commissioner's brief incorrectly says that Carlton received a split sentence of four years to serve in prison with the one-year balance to serve on probation, and thus also says incorrectly that his total sentence was nine years in prison and six years on probation.

probation." The sentencing disposition forms for Counts 6 and 7 included general terms and conditions of Carlton's probation, as well as special conditions of his probation reflected in an Addendum A. The special condition at issue in this case said, "Defendant shall have no contact with his children unless an order from the Cobb County juvenile court allows it." Carlton did not appeal.

(b) *The Probation Revocation Proceeding*

About two years later, on October 3, 2014, while Carlton was incarcerated based on his sentence on Count 4, the State filed a petition to revoke his probation, alleging that he had violated the special condition by attempting to contact his children by telephone and mail on three occasions at their adoptive parents' residence. On November 17, the petition was amended to add that Carlton had violated the first general condition of his probation, which was "not to violate the criminal laws of any government unit," alleging that he had committed the offense of aggravated stalking by attempting to contact his children by mail.

At the revocation hearing held on September 30, 2015, Carlton's counsel argued that the trial court did not have the authority to revoke Carlton's probation because he was still serving the confinement portion of his sentence and the probated period had not yet begun. Relying on *Postell v. Humphrey*, 278 Ga. 651 (604 SE2d 517) (2004), the trial court determined that it had the authority to revoke Carlton's probation prior to the beginning of the probationary period.

On October 1, 2015, the trial court issued a revocation order, finding that Carlton had violated the terms of his probation by attempting to contact his children by telephone and mail and by committing criminal attempt to commit aggravated stalking.[5] The court revoked six years of Carlton's probation based on the violations of his probation conditions, ordered that he serve that time consecutive to the six years he was already sentenced to serve in

---

[5] The habeas court noted in its final order that the trial court used a form order which incorrectly states that Carlton waived his right to a hearing on the probation revocation matter.

5

prison, and modified his probation terms in an addendum.[6] Carlton filed an application for discretionary appeal of the revocation order, but the Court of Appeals dismissed the application as untimely.

(c) *This Habeas Proceeding*

On December 28, 2018, Carlton, acting pro se, filed the habeas corpus petition now at issue — his third habeas petition — in the Baldwin County Superior Court, challenging the validity of his original convictions and the trial court's revocation order on seven grounds. On June 9, 2019, he amended his petition to add an eighth ground. After Carlton was transferred to the Jenkins Correctional Facility, the habeas case was transferred to the Jenkins County Superior Court ("habeas court"). On January 6, 2020, Carlton amended his petition again to raise a ninth ground, and at the evidentiary hearing on February 18, 2020, he amended the petition to add a tenth ground.[7] The ten grounds were as follows:

1. Due process violation in that the trial court revoked Carlton's probation before he began it and before he

---

[6] Carlton refused to sign the revocation order and the addendum.
[7] There was no testimony at the evidentiary hearing, and the parties tendered only documents into evidence.

entered probation before being released from prison.

2. Equal protection violation because Carlton was said to have violated a condition of probation before the conditions began.

3. Ineffective assistance of plea counsel in that counsel told Carlton that no condition of his probation would begin until he was released from the prison sentence, reported to his probation office within 48 hours of his release, and signed probationary documents, and that probation conditions would not interfere with his parental rights.

4. Due process violation because Carlton's probationary term was revoked prematurely based on statutory provisions that were vague, ambiguous, and overbroad provisions in OCGA §§ 17-10-1 (a) (4), 17-10-1 (a) (7) (A), and 42-8-34 (g).

5. Cruel and unusual punishment in that one of the special conditions of probation is that Carlton is banned from every county in Georgia except for Echols County, and he has been unable to abide by this condition due to Cobb County and the Department of Corrections forcing him to be in confinement outside of Echols County.

6. Due process challenge to OCGA § 17-10-1 (a), claiming that the statute violates Carlton's right to due process because it is ambiguous, overbroad, and unconstitutional.

7. Guilty plea not knowingly and intelligently entered because the trial court and Carlton's trial attorneys specifically stated that the conditions of probation would not be active until he was released from prison and that his convictions would not contribute to his parental rights being terminated.

8. Ineffective assistance of probation revocation counsel.

9. Illegal conviction in that impersonation of a public

> employee is not a crime as contemplated by OCGA § 16-10-23.
>
> 10. Void indictment as to Counts 4, 6, and 7 in that the indictment was void on its face because it did not allege any of the essential elements contained in the statute.

(d) *The Attempted Aggravated Stalking Case*

Meanwhile, in August 2018, Carlton was tried and convicted in Cobb County of criminal attempt to commit aggravated stalking, the conduct that was in part the basis for his probation revocation. He appealed, and on June 29, 2020 — after the habeas hearing — the Court of Appeals reversed those convictions based on the erroneous admission of bad-character evidence. See *Carlton v. State*, 356 Ga. App. 1, 7-10 (846 SE2d 175) (2020).

In the appeal, Carlton also argued, among other things, that because the State did not introduce evidence of a no-contact order that was "in effect" at the time he sent a postcard and letter to his children, there was a fatal variance between the indictment and the proof at trial. See *Carlton*, 356 Ga. App. at 4. See also OCGA § 16-5-91 (a) (defining aggravated stalking to require proof that the defendant stalked the victim in violation of a court order then "in

8

effect"). In the course of its discussion of that issue, the Court of Appeals stated that the no-contact probation condition in Carlton's 2012 criminal sentence "pertained only to Counts 6 and 7, which he was not yet serving at the time he sent the postcard and letter [to his children's residence]." *Carlton*, 356 Ga. App. at 5. In a footnote, the court elaborated:

> On Count 4, Carlton was sentenced to five years to serve, with no probation. And Carlton's sentence on Counts 6 and 7 was to be served consecutively to Count 4. Carlton was sentenced on Count 4 less than two years before he sent the postcard and letter. The State presented no evidence that he had transitioned, for any reason, to serving his sentence on Count 6 or 7. Accordingly, there is no evidence in the record to support the conclusion that at the time he sent the postcard and letter Carlton was subject to the no-contact provision pertaining to Counts 6 and 7 of the Criminal Sentence.

Id. at 5 n.4. Based on this analysis, the Court of Appeals concluded that there was a variance between the indictment and the evidence, but then held that the variance was not fatal because Carlton's letters had violated the no-contact provision in an earlier juvenile court order and he had not claimed surprise. See id. at 4-6.

(e) *The Habeas Court's Final Order*

9

On March 2, 2021, the habeas court granted relief to Carlton in a 10-page final order. After summarizing the procedural history, the grounds Carlton raised, and the factual background, the order concludes that Carlton's probation revocation claims were not impermissibly successive, despite his two earlier habeas cases in Chatham County and Wheeler County. In Carlton's first habeas case, the Chatham County Superior Court had granted him relief based on its determination that the statute he had pled guilty to violating, OCGA § 16-10-23, was unconstitutionally vague, but this Court reversed that decision. See *Kennedy v. Carlton*, 294 Ga. 576, 576 (757 SE2d 46) (2014). The Wheeler County Superior Court had then dismissed as successive Carlton's second habeas petition, which he had amended to include claims about his probation revocation.

The habeas court in this case pointed out that it was not possible for Carlton to have raised the claims relating to his probation revocation in his first, Chatham County habeas case, because the revocation had not yet occurred, so the claims could not

have been successive in his second, Wheeler County habeas case. The habeas court noted that the Wheeler County court's final order did not include any factual findings addressing Carlton's amended claims relating to the revocation, and the Wheeler County court never made a determination of whether those claims were procedurally barred or defaulted.

The habeas court also noted that the Court of Appeals' dismissal of Carlton's untimely application for discretionary appeal of the probation revocation order would generally operate as a final judgment that would foreclose consideration of any grounds subsequently raised relating to the revocation order (that is, the claims would have been procedurally defaulted or barred in his new habeas petition, despite the Wheeler County court's making no such rulings). However, the habeas court said that "subsequent findings in a published opinion by the Court of Appeals of Georgia strongly suggest that the trial court may have been without jurisdiction to

revoke Carlton's probation at the time of the revocation."[8] The habeas court concluded that "the claims relating to the [trial] court's revocation of Carlton's probation are not successive[.]"[9]

The "Analysis" section of the habeas court's order then begins by explaining that "Georgia's customary procedural default rule . . . does not apply to a claim that a criminal conviction or sentence was void on jurisdictional or other grounds," citing *Tolbert v. Toole*, 296 Ga. 357, 361 & n.8 (767 SE2d 24) (2014). The court said that — based "on the substance of Carlton's claims on the whole" — the evidence before the court demonstrated that "Carlton's [revocation] sentence is void as a matter of law because the probation revocation proceedings were likely void *ab initio* in that the [trial] court lacked jurisdiction."

---

[8] We note that the parties had not filed any briefs regarding the Court of Appeals' intervening decision in Carlton's attempted aggravated stalking case, nor did the habeas court ask the parties to do so.

[9] Even if erroneous (as it appears it was), the Wheeler County court's ruling that Carlton's revocation claims were successive would seem to be res judicata in this subsequent habeas proceeding. However, while the habeas court appears to have had access to the record of the Wheeler County habeas case, that record is not in the appellate record here, and the Commissioner does not enumerate error regarding the successiveness issue in his appeal.

Next, the habeas court noted that "[d]istilled to its essence," Carlton's argument was that the terms of his negotiated guilty pleas were broken and that he was subject to punishment that the law does not allow. Carlton "aver[red]" that when he entered the negotiated plea, his understanding was that the special condition of probation prohibiting contact with his children would not be effective unless and until the resolution of proceedings in the Cobb County Juvenile Court, where there was a pending matter regarding the termination of his parental rights. Carlton had consistently maintained that he was told by the Division of Family and Children Services that he would need to demonstrate a meaningful relationship with his children in order to avoid termination of his parental rights. Carlton's probation was revoked during the time that he was serving his sentence of confinement on Count 4, which included no period of probation. He argued that he could not have been subject to the special condition of probation during that time. He further averred that if he had known that he would be subject to the no-contact condition as applied by the court, he would not have

13

pled guilty.

The habeas court pointed out that although the trial court pronounced that the first special condition of probation was "you shall have no contact with the children unless and until an order from the Cobb County juvenile court allows you to do so," the trial court also told him:

> Mr. Carlton, *you're going to be on probation with me for approximately nine years. During that period of time*, I think it goes without saying that you and I just don't need to see each other in this courtroom *during that period of time*, and I expect you to abide by each and every one of the terms and conditions of the probation that I set forth for you just a moment ago.

(Emphasis in habeas court's order; footnote omitted). The habeas court said that this language supported Carlton's argument "that his understanding was that the [trial] court intended him to abide by the special conditions of probation only upon the start of the probated period."

Under the heading "New Facts," the habeas court then explained that it had "become aware" of the Court of Appeals opinion in Carlton's attempted aggravated stalking case. Pointing to the

14

fatal-variance discussion in that opinion, the habeas court concluded:

> According to the Court of Appeals of Georgia, Carlton had not transitioned into serving the probated portions of his sentences under Counts 6 and 7, and there was no probationary period attached to the maximum sentence of confinement under Count 4, which [he] was serving at the time his probation was revoked. In other words, Carlton's probation could not have been revoked based on a violation of probationary terms that applied to a probationary period [that] had not yet begun.

In a footnote, however, the habeas court recognized that the Court of Appeals had not applied an "aggregate sentence" analysis, citing *Layson v. Montgomery*, 251 Ga. 359 (306 SE2d 245) (1983), and *Parrish v. Ault*, 237 Ga. 401 (228 SE2d 808) (1976).

The habeas court next discussed "Out of Time Appeal Considerations." The court said that "[b]ased on the evidence, Carlton should be entitled to pursue out-of-time appeal remedies," and the record did not "show that Carlton has availed himself of that procedure." Even though the habeas court recognized that a petitioner can seek an out-of-time appeal in a habeas proceeding, the court concluded that "any claims that relate back to Carlton's guilty

15

plea in 2012[ ] are not yet ripe for consideration in habeas," and "[j]udicial economy would be better served if Carlton sought that relief in the trial court." Considering "specific claims raised in the [habeas] petition," the court ruled that ground 5 was meritless because of the amendment of Carlton's probation order and grounds 9 and 10 were procedurally barred by rulings in Carlton's first habeas case.

At the end of this section, the habeas court said that while it "ha[d] not specifically enumerated the Grounds addressed, as raised in [Carlton's] Petition, the [c]ourt has considered all of Carlton's claims in *substance* rather than strict construal of each individual claim." (Emphasis in original). The court concluded:

> Based upon the . . . determinations by the Court of Appeals of Georgia relating to the very matters before the [trial] court at the probation revocation hearing on October 1, 2015, this [c]ourt must GRANT habeas corpus relief because an alternative result would directly contradict determinations made by the Court of Appeals of Georgia.

In a footnote, the habeas court stated that "[h]abeas courts are bound by determinations made by the Court of Appeals of Georgia,

even if erroneous," citing *Buckner v. Barrow*, 297 Ga. 68 (772 SE2d 703) (2015).

Finally in the "Conclusion" of the order, the habeas court said that Carlton had raised a "meritorious due process argument that warrants granting Writ of Habeas Corpus," and remanded Carlton to the custody of the trial court where he "may be entitled to pursue additional post-conviction remedies."

On March 11, 2021, the Commissioner filed a motion for reconsideration, arguing that the trial court had the authority to revoke Carlton's probation before the probationary period began. Six days later, the habeas court summarily denied the motion. The Commissioner then filed this appeal.

2. The Commissioner contends that the habeas court erred when it granted relief on the ground that the trial court did not have the authority to revoke Carlton's probation when the probationary period of his 2012 sentences had not yet begun. We agree.

OCGA § 17-10-1 (a) (1) (A) says, in pertinent part:

The judge imposing the sentence is granted power and

17

authority to suspend or probate all or any part of the entire sentence under such rules and regulations as the judge deems proper, . . . including the authority to revoke the suspension or probation when the defendant has violated any of the rules and regulations prescribed by the court, even before the probationary period has begun[.]

In *Postell v. Humphrey*, 278 Ga. 651 (604 SE2d 517) (2004) — the case on which the trial court relied in revoking Carton's probation — this Court explained that the General Assembly had amended OCGA § 17-10-1 (a) (1) (A) in 2001 to "provide expressly that sentencing judges [are] authorized 'to revoke . . . probation . . . even before the probationary period has begun.'" Id. at 652 (quoting the statute). See also *Layson*, 251 Ga. at 360-361 (upholding "the revocation of the probated portion of a sentence based upon a separate crime committed during the portion of the [split] sentence to be served in confinement"); *Parrish*, 237 Ga. at 401-402 (holding that "a trial judge can revoke a probated sentence that is to begin at a future date[,]" and explaining that whether a defendant's sentences on four felony counts — a split sentence of three years to serve in prison and two years on probation on the first count,

18

followed by five-year concurrent probation sentences on the other three counts — were "considered one sentence or four sentences is immaterial for practical purposes" when "[t]he ten years was imposed by the same trial judge at the same time"). Thus, the Commissioner is correct that, under OCGA § 17-10-1 (a) (1) (A) and our precedent, the trial court was authorized to revoke Carlton's probation even before the probationary period of his sentences began.

The habeas court did not appear to dispute this proposition. Instead, the habeas court indicated that it felt bound to grant relief on Carlton's claim that the trial court was unauthorized to revoke his probation because the Court of Appeals had said, in the course of deciding Carlton's appeal from his attempted aggravated stalking convictions, that Carlton was not yet subject to the no-contact probation condition at the time he violated that condition, as he was still serving his confinement sentence on Count 4 of his original case and had not yet "transitioned" into serving his probationary sentences on Counts 6 and 7. Although the habeas court did not cite

19

*Postell*, it recognized that the Court of Appeals' discussion was inconsistent with the analysis set forth in *Layson* and *Parrish*.

Nevertheless, the habeas court relied on *Buckner* for the proposition that it was "bound by determinations made by the Court of Appeals of Georgia, even if erroneous." *Buckner* held that "if an issue is raised and resolved on direct appeal from a criminal conviction, the habeas court is bound by the appellate ruling and cannot reexamine it, even if it appears erroneous[.]" 297 Ga. at 69. See also *Roulain v. Martin*, 266 Ga. 353, 354 (466 SE2d 837) (1996) (noting that, under the law of the case doctrine, the habeas court was bound by a prior ruling on direct appeal "regardless of whether that ruling may be erroneous"). The principle set forth in *Buckner* does not apply, however, under the circumstances of this case.

While appealing his convictions for attempted aggravated stalking — not the trial court's separate and earlier revocation of his probation, which he was unsuccessful in trying to appeal — Carlton argued that there was a fatal variance between his attempted aggravated stalking indictment and the proof at trial because the

20

State failed to introduce evidence of a no-contact order in effect at the time he sent the postcard and letter to his children. See *Carlton*, 356 Ga. App. at 4. The Court of Appeals did not address, much less resolve, the issue of whether the trial court in Carlton's earlier public-employee-impersonation case had authority to revoke his probation before he began serving the probationary period of his sentences, which is an issue governed by the plain text of OCGA § 17-10-1 (a) (1) (A) and our decisions in *Postell*, *Layson*, and *Parrish*. Instead, the Court of Appeals decided the legally distinct question of whether Carlton had violated a court order then "'in effect'" as that term is used in the aggravated stalking statute. *Carlton*, 356 Ga. App. at 5 (quoting OCGA § 16-5-91 (a) and citing only a Court of Appeals case interpreting that statute). We need not and do not decide whether the Court of Appeals' discussion of Carlton's sentences with respect to the latter statutory question was correct, as that question is not presented here and it is clear that the court did not issue a ruling on the revocation-authority issue that Carlton raised in this habeas case, which means that the law of the

21

case doctrine applied in cases like *Buckner* does not apply here. See

*Currid v. DeKalb State Court Probation Dept.*, 285 Ga. 184, 186 n.5

(674 SE2d 894) (2009) (explaining that the law of the case doctrine

applies only to issues expressly ruled on previously, not an "implied"

ruling on an issue not addressed in the previous decision); *Woodrum*

*v. Ga. Farm Bureau Mut. Ins. Co.*, 360 Ga. App. 126, 129 (860 SE2d

900) (2021) (same). See also *DeHart v. Liberty Mut. Ins. Co.*, 270 Ga.

381, 387 (509 SE2d 913) (1998) (Carley, J., concurring) (explaining

that "[a]lthough this appeal does involve the same parties as [in an

earlier decision], it arises in the context of separate litigation

wherein a different question is presented for resolution[,]" so the

earlier decision does not constitute law of the case).

Accordingly, the habeas court was not bound by the Court of

Appeals' inapposite ruling and instead should have decided

Carlton's revocation-authority claim on its merits. And because

OCGA § 17-10-1 (a) (1) (A), *Postell*, *Layson*, and *Parrish* make it

clear that such a claim has no merit, we reverse the habeas court's

grant of relief on that ground.

3. As outlined in Division 1 above, Carlton raised 10 grounds in his habeas petition as amended, but the habeas court ruled expressly only on ground 1 (granting relief) and grounds 5, 9, and 10 (denying relief). Rather than individually addressing the remaining six grounds, the habeas court noted that it had "considered all of Carlton's claims in *substance* rather than strict construal of each individual claim." (Emphasis in original). The court ruled, however, that Carlton was entitled to pursue out-of-time appeal remedies in the trial court, so his claims related to his 2012 guilty plea convictions were not yet ripe for consideration in habeas and "[j]udicial economy would be better served if Carlton sought that relief in the trial court."

The habeas court cited no authority, and we see no basis, for declining to address claims that properly can be raised in a habeas proceeding because such claims might also be raised in the judicially created — and recently questioned — out-of-time appeal process in the trial court, especially when doing so may allow a habeas petitioner to circumvent the statute of limitations and other

statutory provisions that apply to habeas actions.[10] See *Schoicket v. State*, ___ Ga. ___, ___ (865 SE2d 170) (2021); *Collier v. State*, 307 Ga. 363, 379-382 (834 SE2d 769) (2019) (Peterson, J., concurring specially). We therefore also reverse the habeas court's judgment to the extent the court declined to address Carlton's claims.

On remand, the habeas court should rule on Carlton's claims related to his 2012 guilty pleas. It is unclear which of Carlton's other claims the habeas court believed were "in substance" the same as his ground 1 (or perhaps were mooted by the court's grant of relief on that ground).[11] On remand, and consistent with our reversal of

---

[10] In this respect, we note that in the habeas court, the Commissioner argued that Carlton's claims related to his 2012 guilty plea convictions (which the Commissioner identified as grounds 3, 5, and 7) were untimely under OCGA § 9-14-42 (c) (1), which says that "[a]ny [post-conviction habeas] action . . . shall be filed . . . within four years in the case of a felony . . . from . . . [t]he judgment of conviction becoming final by the conclusion of direct review or the expiration of the time for seeking such review[.]" In response, Carlton argued that the limitation period did not begin to run until the probation revocation order was issued on October 1, 2015, relying on OCGA § 9-14-42 (c) (4), which extends the habeas filing deadline to four years after "[t]he date on which the facts supporting the claims presented could have been discovered through the exercise of due diligence." The habeas court's order does not address the timeliness of Carlton's claims, although ground 5 was denied on the merits.

[11] The Commissioner asserts that the habeas court granted relief only on ground 1, and denied relief on the remaining grounds. Carlton argues that the habeas court implicitly granted relief on all grounds except ground 5, which

the court's grant of relief on ground 1, the court should address any remaining grounds as well, making sure to provide the required "written findings of fact and conclusions of law upon which the judgment is based." OCGA § 9-14-49.

*Judgment reversed in part and case remanded with direction. All the Justices concur.*

Decided January 19, 2022 — Reconsideration dismissed March 8, 2022.

Habeas corpus. Jenkins Superior Court. Before Judge Peed.

*Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General*, for appellant.

Lewis A. Carlton, *pro se*.

---

the habeas court expressly ruled was meritless, and grounds 9 and 10, which the habeas court expressly determined were procedurally barred. But in any event, Carlton did not seek review of and does not dispute the habeas court's rulings rejecting grounds 5, 9, and 10, so those portions of the habeas court's order stand.